[Civ. No. 20931.   First Dist., Div. Three.   Sept. 20, 1963.]

ALFRED R. HANSEN et al., Cross-complainants and Respondents, v. WESTERN TITLE INSURANCE COMPANY, Cross-defendant and Appellant.

Gordon B. Turner and Maurice E. Huguet, Jr., for Cross-defendant and Appellant.

Sellar & Engleking and Rudd Sellar for Cross-complainants and Respondents.

DEVINE, J.—Respondents, holders of a title insurance policy issued by appellant, having been sued by a third person on transactions connected with acquisition of the insured property, cross-complained against appellant on the policy and obtained judgment in amount $8,782.25.[1] This amount represents the sum paid to the third person in settlement of his lawsuit, plus attorney's fees and costs.

Respondents, who are builders, were interested in acquiring two adjacent parcels of undeveloped land near Concord in Contra Costa County, for purposes of subdivision. One parcel was owned by Wilson, the other by Fissori.[2] Respondents dealt directly with Wilson and obtained an option to purchase his land, but because Wilson was friendly with Fissori, it was arranged that he would obtain an option, if he could, from Fissori and assign it to respondents. This was done. The transaction involving the original Wilson property is not directly concerned in this lawsuit, but the Fissori deal is, because the title insurance policy which is sued on was issued on the Fissori parcel.

The Fissori option to Wilson contained a detailed recitation of the price per acre, the duties of the optionee to subdivide and improve, and other matters not particularly relevant; the option was for two years, but was renewable for two more. It was expressly made assignable by the optionee without consent of Fissori. The agreement was drawn by respondents' attorney. On February 24, 1955, about four months after Fissori had granted the option to Wilson, Wilson entered into a contract with respondents, which contained a grant of an option of his own property, and an assignment of the Fissori option. Here, again, the contract was prepared by respondents' attorney. The contract provided, to put it most generally, that respondents would develop the land into a subdivision, and there was set up a profit-sharing arrange-

---

[1]Throughout this opinion, the predecessor company to the present appellant is considered as appellant, without distinguishing the two.
[2]The parties Wilson and Fissori are referred to in the singular, although in many of the transactions their spouses participated.

ment between Wilson and respondents. One part of this contract has given rise to this litigation, namely, paragraph 17 (a) which reads, in part, as follows: ''Upon the expiration of said four year period all unimproved lots, pieces or parcels shall be reconveyed to first parties by appropriate conveyance.'' The lawsuit between Wilson and respondents, which was settled before trial and which is described below, was based upon the claim of Wilson that the sentence just quoted applies to the Fissori land as well as to the Wilson property. The contract was recorded on May 2, 1955, at the request of appellant title insurance company, and at the direction of respondents.

About ten weeks later, and on May 2, 1955, a holding agreement between Fissori and respondents and the title insurance company was executed. This document was prepared, not by counsel for respondents as the option had been, but by an escrow officer of the title insurance company who, it would appear from some efforts to qualify him as an expert, was not a lawyer. The holding agreement provides that the Fissori property is conveyed to the title company on instruction to convey to respondents on payment of $2,500 an acre, but if the entire price is not paid in four years, any land not paid for at the agreed price per acre shall be reconveyed to Fissori. A few days later, this was modified by a supplemental holding agreement, also prepared by the title company, which provides for purchase by respondents of all of the Fissori property at a price of $34,000, except one parcel, upon which respondents were to build a home for Fissori; and a deed to respondents of all but the excepted parcel was authorized on down payment of $5,000. A policy was issued to respondents, showing title vested in the title company, but this, of course, was pursuant to the holding agreement and respondents were named as the insured.

It was testified by the former officer of the title company who had drawn the holding agreements (he was, at trial time, in the construction business) that he knew of the option of February 24, 1955, when he was preparing the holding agreements, that he obtained the consent of Wilson to both of these agreements (Wilson consented in writing to each of them), that he considered that the interest created by the Fissori option merged on conveyance of the property to the title company, and that as a result the policy does not list among the exceptions any interest or encumbrance of Wilson.

The title insurance policy contains the following ex-

clusion from coverage among its stipulations: "(c) defects, liens, encumbrances, or other matters created or suffered by the insured claiming such loss or damage." The policy also contains an agreement of the company to defend against loss or damage not exceeding $34,000, by reason of any defect or any lien or encumbrance upon the title to the insured existing as of May 23, 1955.

The Wilson land was not developed by respondents at any time, nor was the Fissori land. The reasons are testified to but briefly by the respondents, namely, changes in zoning and in sewerage requirements, and the reasons are not particularly material, anyway, as between the present parties. Dispute about the development, or lack of it, arose between Wilson and respondents, and the plan to develop the Wilson properties under the option was abandoned. In 1957 respondents, who were then ready to pay the total purchase price of the Fissori parcel, became uneasy about any interest which Wilson might have therein and consulted an attorney whom they engaged for the specific purpose of advising them on this subject, and the manager of the title insurance company. They were assured by them that Wilson had no interest; thereupon, they paid the whole purchase price, and obtained a deed to the Fissori property from the title company on August 7, 1957.

On November 20, 1958, Wilson filed an action against respondents, alleging that they had failed to develop the Wilson and Fissori lands, as provided in the option agreement of February 24, 1955; that they had refused to reconvey the Fissori lands to Wilson, and that they were obliged to do so because the entire Fissori parcel was unimproved; and alleging damages in amount $40,000. Demand was made by respondents against the title company to defend the action and the company refused on the ground that the Wilson claim was created by the insured and, therefore, was excepted from the policy under the stipulation quoted above. Respondents cross-complained against the title company, which answered setting up the defense of creation of the claim by the insured, and also the statute of limitations. (Code Civ. Proc., § 339, subd. 1.) The trial court found that the claim was not created by respondents, that the settlement made by respondents was a reasonable one, and that cross-complainants, respondents, had no knowledge of the Wilson claim for reconveyance until August 12, 1959, the date of the filing of the second amended complaint by Wilson.

## Interpretation of the Policy

The principal problem in the case is, what is meant by excluding from the insured risks a lien, encumbrance or defect "created" by the insured? Does the word "created" refer only to a charge which has been consciously produced by the insured, or does it also include one which has resulted from inadvertence, such as the signing by the insured of an ambiguous document, the terms of which are known to the insurer before issuance of the policy, and which, if given that interpretation which is unfavorable to the insured but which was unintended by him, casts some cloud on his title to or interest in the property?

In answering these questions, we are guided to a marked degree by the accepted principle of interpretation of insurance policies which requires ambiguities to be resolved against the insurer. (*Coast Mutual Building-Loan Assn.* v. *Security Title Ins. & Guar. Co.*, 14 Cal.App.2d 225, 229 [57 P.2d 1392]; *National Holding Co.* v. *Title Ins. & Trust Co.*, 45 Cal.App.2d 215, 225 [113 P.2d 906].) This principle of construction has a particular fitness in this case because the stipulation being considered has received almost no interpretation in the courts. No California case has come anywhere near the point. Appleman on Insurance Law and Practice, volume 9, section 5209, cites but four cases on the subject, none of them answering the precise problem before us. The fact that so little appears in the case law gives added weight to the proposition that the interpretation if the case is doubtful should be against the insurer, because on the one hand, the insured is left without judicial interpretation to help him construe the stipulation (assuming, of course, as we do, that he was aware of the stipulations, which are in miniscule print as contrasted with the typed provisions of indemnity), and on the other hand, too, insurer ought to have been cognizant of the dearth of precedent, and could have spelled out its meaning of "created" by an expression such as "created, deliberately or inadvertently."

All of the above is given by way of stating the auxiliaries to interpretation. We believe the word "created" means conscious, deliberate causation, and that if the word is also susceptible of the significance of bringing about a result inadvertently or negligently, we should accept the interpretation which is more favorable to the insured. One speaks of a person as "creative" if he is inventive and intelligently original and productive, not if he blunders, or is negligent,

and thus causes or allows unintended difficulties. It is not common parlance to endow mistake or maladroitness with the quality of creation, and the most that can be said, or that is said by appellant, is that the claim of the third party, Wilson, was brought about by poor draftsmanship of the option agreement by respondents' lawyer.

In *First Nat. Bank & Trust Co.* v. *New York Title Ins. Co.*, 171 Misc. 854 [12 N.Y.S.2d 703, 709], the court reasoned that the word "suffered" does not mean merely something less than consent, although the word in itself might permit the lesser meaning, but, because of the strict interpretation against the insurer, signifies consent with "intention that what is done is to be done." True, the reasoning probably is dictum, because the court held that the policy had been obtained on false representation, but it is good and careful reasoning. If "suffered" means "consented," within the terms of the policy, surely "created" must mean more.

Although we would be inclined to make an outright restriction of the word "created," as used in the policy, to an intentional doing by the insured, nevertheless, because of our unwillingness to decide more than we must in a case so lacking in precedent, we limit our ruling to a case in which the insured did not intentionally produce the claim and in which the insurer itself had opportunity to know of the defect. It is conceivable that a case could arise where the insured's inadvertence or mistake would produce a defect which it would be outside the power of the insurer reasonably to find; but such a case is far removed from this.

The very contract by which respondents acquired the right to the Fissori property and upon which the policy was issued, was not the assignment of the option (the option, of course, need not have been exercised by respondents) but the holding agreement, and this was drawn by the title insurance company with full knowledge of the terms of the option agreement. Indeed, appellant argues in its brief that the title company's officer attempted to, and did, eliminate Wilson by having him initial the holding agreement and its supplement. The company did not inform respondents of danger that Wilson would demand reconveyance of unimproved lands, nor did it get any express waiver of any right of Wilson to reconveyance. Until the holding agreement was signed by respondents, they could not have been obliged to "reconvey" unimproved lands to Wilson, for until then they had none to convey. By its active participation, the title company became a causative factor, an intervening cause between the drawing

of the option and the execution of the agreement, and it brought about (we had almost said "created") the claim which Wilson later sued upon.

Appellant places much reliance on *Brick Realty Corp.* v. *Title Guar. & Trust Co.*, 161 Misc. 296 [291 N.Y.S. 637], a New York City Court case. In this, the third party was the insured's former wife, who had alleged in her suit against the insured that he had fraudulently set up plaintiff corporation as a dummy to foreclose on property and wipe out her dower rights. If the allegations in the wife's action were correct, the defect in title had indeed been created by the insured, not only consciously, but fraudulently, and by the insured solely. The court's holding that the insurer need not defend the action, it is plain to see, was based on a far different case than that which is before us.

Likewise, in *Feldman* v. *Urban Commercial, Inc.*, 78 N.J. Super. 520 [189 A.2d 467], a transaction in which the insured was engaged was described as "an unconscionable scheme"; in *Taussig* v. *Chicago Title & Trust Co.* (7th Cir.) 171 F.2d 553, the insured's fraud, which could not have been known to the title company, absolved the latter from liability under the exception of defects created by the insured; and in *Rosenblatt* v. *Louisville Title Co.*, 218 Ky. 714 [292 S.W. 333], the insured was guilty of fraud. These cases are readily distinguishable from the present one in which the defect, if any, was brought about by faulty draftsmanship of a document which was known to the title company and which the title company acted upon in its own drawing of the holding agreements. We approve the conclusion of the trial court that the claim or encumbrance asserted by the third party was not created by the insured.

### Validity of the Wilson Claim

■ Appellant asserts that actually Wilson had no valid claim to reconveyance, that the settlement made with him is not binding as between insurer and insured, and that the deficiency of Wilson's claim is an issue at this stage and prevents recovery on the cross-complaint. True, it is an issue, but because the policy covers the risk, the settlement is presumptive evidence of the liability of the insured. (*Ritchie* v. *Anchor Casualty Co.*, 135 Cal.App.2d 245, 250 [286 P.2d 1000].) Appellant has not shown that the Wilson lawsuit was an utterly vain one, but, on the contrary, in its briefs, while arguing that Wilson had no valid claim, appellant also argues that Wilson's asserted claim was caused by a blunder

in draftsmanship by respondents' attorney. When the Wilson suit was pending, appellant, so far as the record shows, offered no support to respondents, but contented itself with its declaration that the risk was not covered because ''created'' by the insured. Tardy assurance from an ally who has withdrawn, that the field could have been won without his help had the ground been stood, is unavailing.

### The Statute of Limitations

Appellant's point on the statute of limitations is that the statutory period, which starts to run two years from the discovery of the loss or damage suffered by the insured on a title insurance policy (Code Civ. Proc., § 339, subd. 1), commences with the signing of the option by respondents in 1955. At the time of signing of the option, however, no loss or damage had occurred. The testimony was that respondents did not know of Wilson's claim until his complaint was filed in November 1958, well within two years before filing of the cross-complaint. Appellant's manager, too, believed that ''Wilson was out'' as late as 1957, two years after the holding agreements. The code section refers to discovery, not to the date when discovery would have been possible.

Judgment affirmed.

Draper, P. J., and Salsman, J., concurred.