147 N.J. Super. 427 (1977)
371 A.2d 370
WILLIAM S. KEOWN, PLAINTIFF,
v.
WEST JERSEY TITLE AND GUARANTY COMPANY, A NEW JERSEY CORPORATION, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided January 28, 1977.
*430 Mr. M. Gene Haeberle for plaintiff.
Mr. Joseph S. Georgiana for defendant (Messrs. Capehart & Scatchard, attorneys).
TALBOTT, J.C.C., Temporarily Assigned.
This is an action for damages by an insured against a title insurer of real property. Plaintiff William S. Keown is the succeeding trustee of a trust created by the will of Clarence A. Munger, *431 deceased. The testator died in 1959. Plaintiff qualified as successor trustee in November 1959 after the death of the original trustee, his father, Walter S. Keown. Plaintiff is a lawyer, as was his father. Plaintiff also acted as successor executor under the will after the death of his father, the original executor. Plaintiff acted as his own attorney as executor and trustee of the estate.
A principal asset of the estate was a commercial property located at the southwest corner of Broadway and Federal Streets in Camden which the plaintiff conveyed to the city as a result of a condemnation judgment in 1963 for $400,000. The net proceeds of the settlement were about $315,000 which the trustee was obliged to invest in some manner.
Plaintiff was advised of the availability for sale of a commercial property in Egg Harbor City, subject to a long-term lease to an Acme store, by an attorney who had done tax work for the estate. Negotiations between plaintiff and the agent of the owners of the property resulted in execution of an agreement of sale dated June 11, 1963 under which plaintiff, as succeeding trustee, agreed to purchase the Egg Harbor City property for the sum of $75,000 over the existing mortgage balance of $148,309.45, making a total sales price of $223,309.45. The agreement also provided for settlement to take place at the offices of defendant West Jersey Title and Guaranty Co. (West Jersey) on or before June 21, 1963. The agreement further provided that the "title to be delivered shall be marketable title and insurable by any reputable title company."
On June 10, 1963 plaintiff ordered title insurance from West Jersey. He spoke with Raymond B. Heston, defendant's then vice-president and treasurer. On the application form Heston placed a note reading "Examiner  please check with Mr. Tobin as to capacity of Mr. Keown to take title as successor trustee." At the top of the form are the words "Super Rush." The application was assigned to Herbert S. Stepler, a title examiner then employed with West Jersey.
*432 The title search work was done by South Jersey Title Insurance Co. and delivered in abstract form to Stepler. Stepler went to the surrogate's office in Camden and made a written list of the docket index in the Munger estate from the death certificate of Clarence A. Munger to the qualification of plaintiff as succeeding executor and trustee. Stepler examined the will index of the surrogate to confirm that plaintiff had qualified as successor trustee. Stepler did not review the will clauses to determine whether plaintiff had authority to invest trust funds in real estate. Neither Stepler nor Tobin, who was then West Jersey's Title Officer can now recall whether they discussed this matter or whether Tobin rendered an opinion as to whether plaintiff had the authority to invest in real estate under the terms of the will.
Plaintiff's secretary, Mary E. Morris, had a conversation with Stepler on the morning of June 18, 1963. She took notes of the conversation and transcribed them immediately afterwards and gave the memorandum to plaintiff during the morning and before he went to the afternoon settlement. The memorandum indicated that Stepler, after conversation with Tobin, said it was "o.k." for plaintiff to take title.
In 1968 plaintiff filed with the surrogate an account as succeeding trustee of the estate of Clarence A. Munger, deceased. Exceptions were taken to the account by the beneficiaries of the estate, contending that plaintiff lacked authority under decedent's will to invest trust funds in real estate. The trial judge decided that the will did not authorize investments in real property. The Supreme Court, in In re Munger, 63 N.J. 514 (1973), held on this single issue that the will did not empower plaintiff to invest in real estate and affirmed. After a further hearing on July 30, 1974 the trial judge surcharged plaintiff with respect to the investment in the Egg Harbor property in the sum of $121,911 as of December 31, 1973, with interest of 5% compounded annually, which sums were ordered restored to *433 the trust principal. Additional surcharge sums attributable to the investment of trust funds in the Egg Harbor real estate increased the total that plaintiff must replace in the trust funds in cash to over $160,000. The judgment containing the surcharges provides for its filing as a lien against the Egg Harbor property. This decision is now on appeal to the Appellate Division.
In this action plaintiff contends that his incapacity to invest in real estate was a risk insured against under the terms of the title insurance policy issued by West Jersey and defendant is liable to him for whatever loss he sustains in the accounting action. There are no New Jersey cases or cases in any other jurisdiction in which any court has determined that such a risk is one insured against by a title insurance policy.
Plaintiff contends that he was so insured because (a) the terms of the policy insure him against all loss or damage, not exceeding $225,000 that he shall sustain "by reason of defects in or unmarketability of title," and the title he received was unmarketable; (b) plaintiff's capacity to purchase real property was not a defect "created or suffered" by plaintiff, and therefore not an exclusion under paragraph 2 of the conditions and terms of the policy, and (c) by its actions defendant is estopped from denying coverage.
Defendant counters that (a) the title received by plaintiff was not defective but that he is the owner of an estate in fee simple; (b) any losses suffered by plaintiff were the result of his own grossly negligent acts which he "created or suffered," and as such are specifically excluded from insurance coverage by its terms and conditions, and (c) defendant did not, in telling plaintiff he had right to take title, pass on his authority to invest in real estate, and plaintiff did not rely on this representation in any way.
Title insurance is an agreement whereby an insurer for a valuable consideration agrees to indemnify the assured in a specific amount against losses sustained through defects in the title to real estate, or liens or encumbrances. *434 Sandler v. New Jersey Realty Title Ins. Co., 36 N.J. 471 (1962). Like all other insurance, title insurance is based upon the principle of a distribution of loss among all contributors. A title insurance company binds itself absolutely to indemnify the policy holder for any loss resulting from a defect in title, no matter what the cause, unless the particular defect is excepted in the policy. 45 C.J.S., Insurance, § 966 at 1161. These exceptions can be either in the form of specific exceptions listed in the report of title or in the terms and conditions of the policy.
The standard form of policy of West Jersey issued to plaintiff, dated June 26, 1973, provides in part:
This Policy of Title Insurance WITNESSETH THAT, West Jersey Title and Guaranty Company (hereinafter called the Company) in consideration of the payment of its premium for insuring the title to the land hereinafter described in Schedule A of this Policy, hereby covenants that it will indemnify, keep harmless and insure WILLIAM S. KEOWN, Succeeding Trustee, under the Will of Clarence A. Munger, deceased * * * against all loss or damage, not exceeding TWO HUNDRED TWENTY-FIVE THOUSAND Dollars, which the said insured shall sustain by reason of defects in or unmarketability of the title of the Insured to the estate, mortgage or interest in Schedule A, hereto annexed, or because of liens or encumbrances charging the same at the date of the policy,  saving estates, defects, objections, liens or encumbrances excepted in Schedule B or by the conditions and Provisions of this policy, hereto annexed, which Schedules, Conditions and Provisions are hereby incorporated into and made part of this Contract * * * [Emphasis supplied]
A line of cases beginning with Saracino v. Kasover Construction Co., 102 N.J. Eq. 230 (E. & A. 1927), and see Gravino v. Gralia, 18 N.J. Super. 241 (Ch. Div. 1952); and emphasize marketability as saleability of real estate. They deal factually with formal liens or encumbrances like encroachments and restrictions.
Defendant contends that plaintiff received a marketable title since there was nothing deficient in the title held by the grantor. Title search revealed no liens or encumbrances on its fee simple title, and the title and the peaceful possession *435 of property received by plaintiff was not subject to claims of third parties which would adversely affect plaintiff's rights. Cf. Casriel v. King, 141 N.J. Eq. 515 (Ch. 1948). Plaintiff does not challenge this contention that the title was free of prior liens and encumbrances.
There is no question that the defect which affects the title to this property is plaintiff's lack of authority to purchase real estate under the trust terms of the will. In re Munger, supra. Because of this defect plaintiff asserts he received an unmarketable title. A title is not marketable where there is a doubt concerning either the facts or law on which it is founded. Webster-Art Strength B. & L. Ass'n v. Armando, 128 N.J. Eq. 219 (Ch. 1940).
Three expert witnesses called by plaintiff who represented other title insurance companies in the area testified that they would not presently insure the title upon a sale of this property, except upon an order of a court of competent jurisdiction allowing the sale or the joinder as parties to the sale of all possible beneficiaries of the estate, including the title at any time after it was acquired by plaintiff. They all testified, further, that when a trustee is purchasing real estate it is the custom in the industry to review the document, and if specific authority is not found for such purchase, an exception would be noted on the report of title subject to removal by court order. They testified that this was also the practice in 1963 and is what they would have done under the circumstances of this case. West Jersey's Tobin agreed that defendant would not insure the sale of this property any time after acquisition by plaintiff without the protection of a court order or the joinder of all possible beneficiaries. He further testified that if the plaintiff were selling, West Jersey would check his authority to buy. However, defendant insists it is only responsible for assuring that the grantor has good title to convey. This testimony was given even in light of the admission that West Jersey had participated in the sale of the real estate held by decedent and at that time had questioned the right *436 of the purchaser, City of Camden, to buy. Defendant was familiar with this will and had a copy in its files from 1963.
In spite of its argument that plaintiff received good title, the cases cited by defendant in its trial brief, Webster-Art & Strength B. & L. Ass'n v. Armando, 128 N.J. Eq. 219 (Ch. 1940), and Casriel v. King, 141 N.J. Eq. 515 (Ch. 1948), support the conclusion that the title is unmarketable. This court is persuaded that since this trustee lacked authority to buy this property there is a "defect in title." See United States v. Roebling, 244 F. Supp. 736 at 745 (D.C.N.J. 1965), applying New Jersey law, and Tillotson v. Gesner, 33 N.J. Eq. 313 (E. & A. 1880).
This court holds that title was unmarketable from the moment of the plaintiff's purchase of the Egg Harbor real estate since he lacked authority pursuant to the Munger will, statute or court order to purchase real estate. As a corollary, title was good up to the second of the purchase. However, title received by the insured, plaintiff to this action, was defective and at all times an unmarketable title. The terms of the West Jersey policy indemnified plaintiff against just such a risk  "Defects in or unmarketability of the title of the Insured"  unless the conditions and provisions of the policy exclude indemnity coverage even though the title is unmarketable.
Defendant asserts such an exemption under the "Conditions and Provisions" of the policy, paragraph 2, which reads as follows:
2. Defects or encumbrances arising after the date to which this Policy indemnifies, or created or suffered by the Insured and assessments not confirmed at said date, the legal status of the Insured and the capacity of corporated parties hereby insured, are not to be deemed covered by it, and no approval of any transfer of this Policy shall be deemed to make it cover any such defect, encumbrance, assessment, status or capacity. [Emphasis supplied]
*437 Defendant contends that the defect in the title is one "created or suffered by the Insured" and, is therefore specifically excluded by the terms of the policy.
Insurance policies should be liberally construed in favor of the insured. See Feldman v. Urban Commercial, Inc., 78 N.J. Super. 520, 527 (Ch. Div. 1963), aff'd 87 N.J. Super. 391 (App. Div. 1965), and the cases cited therein. A title insurance policy is subject to the same rules of construction as are other insurance policies. Sandler v. N.J. Realty Title Ins. Co., 36 N.J. 471 (1962); Hansen v. Western Title Ins. Co., 220 Cal. App.2d 531, 33 Cal. Rptr. 668 (D. Ct. App. 1963). However, this court is obligated to interpret this contract to afford coverage only to the full extent "that any fair interpretation will allow." Kievit v. Loyal Protection Life Ins. Co., 34 N.J. 475, 485 (1961) and Feldman, supra, 87 N.J. Super. at 403. This court is required to determine the intentions of the parties from the language in the policy, giving effect so as to render reasonable meaning to its terms. Feldman, supra, 87 N.J. Super. at 402; Caruso v. John Hancock Ins. Co., 136 N.J.L. 597, 598 (E. & A. 1948)
It is necessary to examine what is meant by the phrase "created or suffered by the Insured" The only New Jersey case to deal with this problem is Feldman v. Urban Commercial, Inc., supra, in which our Appellate Division held that plaintiff could not recover under a title policy insuring his mortgage because the defect was due to plaintiff's actions in an attempt to secure a loan which was not made exclusively to benefit the mortgaged property. It was further in violation of the deed from the city redevelopment agency to the developers, as well as a violation of state and federal law. The trial judge had found the entire mortgage transaction was an "unconscionable scheme" and that plaintiff did not come into equity with clean hands. The Appellate Division held this finding to be the law of the case since it was not appealed. It further held that "Plaintiff's actions undoubtedly constitute such affirmative acts so as to preclude him from *438 recovery since he can be said to have `created or suffered' the defect in his mortgage within both the exceptions to the policy and the general principle that no man may be permitted to profit from his own wrongdoing."
A search of the law on this point in other jurisdictions, reveals the following cases which have held the exception clause to be effective in holding the insurer not liable based upon the intentional misconduct of the insured. In Taussig v. Chicago Title & Trust Co., 171 F.2d 553 (7 Cir.1948), the insured was cotrustee of a group of trust estates owning certain real estate. By a series of complex transactions the insured became the sole beneficiary of one of the trusts to which the property in question was conveyed. In a suit by another beneficiary the insured was ordered to reconvey the property, the court finding that the insured had acted in bad faith and in dereliction of his fiduciary duty. In the insured's third-party complaint against the title insurance company the court held that while the insured was guilty of dereliction of fiduciary duties he acquired title with approval of the probate court. The insurer had no basis upon which to suspect a violation of duty, and the exclusions in the contract were effective to protect insurer from liability. In that case, the court found the insured was guilty of positive derelictions in his fiduciary duty, not mere technical violations.
In Rosenblatt v. Louisville Title Co., 218 Ky. 714, 292 S.W. 333 (App. Ct. 1927), there was a finding that the insured's grantor was mentally incompetent. The deed was voided on the grounds of undue influence and fraud. It was there held that the defect in title was due to an illegal act of the insured, grantee, and the risk was not covered by the title policy.
Other cases holding in similar fashion include Conway v. Title Ins. Co., 291 Ala. 71, 277 So.2d 890 (1973) (intentional concealment and oppression of creditor); Ginger v. American Title Ins. Co., 29 Mich. App. 279, 185 N.W.2d 54 (App. Ct. 1971) (fraud); Parker v. Title & Trust Co., 233 Fd. 505 2d (9 Cir.1956) (entrapment and conspiracy).
*439 On the other hand, a defect which is brought about by some accidental or innocent conduct of the insured and which was not intended to have the effect of casting a cloud upon his title has not been considered as having been "created or suffered" by the insured. In Hansen v. Western Title Ins. Co., 220 Cal. App. 2d 531, 33 Cal. Rptr. 668 (D. Ct. App. 1963), the insured settled a claim which arose out of an option assigned by a third party to the insured, the terms of which were ambiguous and known to the title company before issuance of the policy. The appellate court, in affirming a judgment for the insured, held that the exclusionary clause referred to interests intentionally created by the insured, and not to a result brought about negligently or inadvertently by the insured, at least where the insurer itself had an opportunity to know of the defect.
Similarly, First Natl. Bank & Trust Co. v. New York Title Ins. Co., 171 Misc. 854, 12 N.Y.S.2d 703 (Sup. Ct. 1939), held that where a bank acquired title insurance to protect its interest in mortgaged property and the mortgage was declared invalid as a preference under the Bankruptcy Act, the defect was not created by the insured but by operation of law. It held that "created" referred to some affirmative act on the part of the insured bank other than the taking of the mortgage, and that the word "suffered," being synonymous with "permit," implied the power to prohibit or prevent and included knowledge of what was to be done with the intention that it be done, and that since the Bankruptcy Court did not find any actual intent on the part of the bank to obtain a preference, the defect could not be said to have been "suffered" by the bank.
If there is any rule which can be drawn from the few cases involving the particular words "created or suffered by the Insured," it is that if the defect in title is the result of some deliberate dishonest, illegal or inequitable dealings by the insured, there is no coverage, but this is not the case if the defect is brought about by some accidental or innocent conduct of the insured. 98 A.L.R.2d 520. Since *440 normally the insurer is responsible for wording in insurance policy provisions and selects a terminology difficult for laymen to understand, words of doubtful meaning are strictly construed against the insurer and liberally construed to allow coverage. Bowler v. Fidelity and Casualty Co., 53 N.J. 313 (1969). Historically, this doctrine of contra proferentum has been based on the presumption that insurance contracts are contracts of adhesion and the insured has little technical knowledge of contracts, let alone bargaining power. But in the present case this presumption is somewhat overcome by the fact that plaintiff insured is a practicing lawyer who served as both successor trustee and executor. He had a fiduciary duty to understand the insurance policy as well as the terms of the Munger will. However, he was not an expert in real estate law.
Throughout the lengthy litigations which have resulted from the purchase of this real estate it has never been contended that plaintiff intentionally misused trust funds. Defendant in this action, however, alleges that plaintiff was grossly negligent and cannot recover since by his own actions he created the defect in the title.
A trustee, in administering his office, must act with the care and skill which a man of ordinary prudence would take with his own property. Plainfield Trust Co. v. Hegedom, 28 N.J. 483 (1958); Commercial Trust Co. v. Barnard, 27 N.J. 332 (1958). In practicing law an attorney undertakes that he is possessed of reasonable knowledge and skill ordinarily possessed by other attorneys. Morris v. Muller, 113 N.J.L. 46 (E. & A. 1934). Plaintiff as trustee was his own attorney.
When plaintiff entered into the agreement of sale he was satisfied that he had authority as succeeding trustee to invest in real estate. Plaintiff was familiar with the terms of the will. It had been prepared by his father. At the time it was drafted plaintiff was a young attorney working in his father's office and had researched the question of whether or not the passage of the prudent man statute would limit *441 the trustees powers of broad investment including real estate. He was satisfied that the investment powers inserted in the will by his father would include such investments. Consequently, he did not consider an application to the court for instructions and advice as to the construction of the will to determine whether he was empowered to invest in real estate before entering into the agreement of sale, although as a lawyer he was familiar with this procedure.
The investment clause of the will allowed the investment in "securities," and the Supreme Court in the Munger case, supra, stated:
It may be added that "securities" is a term in common parlance with the well-known connotation to laymen of stocks, bonds, debentures, mortgages and other like evidences of secured and unsecured debt and ownership. [Citation omitted] One can hardly conceive of a layman, let alone a lawyer, believing that the term, as distinct from broader words such as "investments," "assets" or "property," includes interests in real estate. [63 N.J. at 521]
While these words of criticism by our highest court would seem to blame plaintiff for the defect, it is necessary to remember that the single issue before the court at that time was whether plaintiff had the authority to invest in real estate. His powers were in that action vis a vis the beneficiaries of the estate. This does not affect his possible indemnification from others, including defendant title company.
We must examine plaintiff's actions closely to see if they amount to gross negligence and, if so, whether gross negligence can be equated with the intentional illegal and fraudulent acts found in the cases cited above to bring plaintiff within the "suffered or created" conditions of the policy.
Shortly after being substituted for his late father as succeeding executor and trustee under the Munger will, plaintiff (as heretofore stated) sold the one substantial asset of the estate, a store at the corner of Broadway and Federal Streets, Camden, to the City of Camden under a condemnation proceeding for which he received approximately $315,000. At *442 the time of the sale the property was essentially vacant because there had been a fire and it was impossible to put a tenant on any floor above the first. Camden's downtown area in the early 1960s was in substantial decay and tenants were not readily available.
Plaintiff then had the duty of investing this money. Most of the money was invested in "blue chip" securities through Bache and Co. When a tax attorney who was familiar with the estate suggested the property in Egg Harbor, plaintiff discussed the investment with the life beneficiary. He pointed out the value of diversification and the tax advantages of investment in real estate. There would be a cash flow of income from the rent as well as tax deductions for interest on the mortgage and depreciation. The cost of the investment was to be $75,000, plus assumption of the mortgage which could be paid by rental income. The life beneficiary agreed that it was a good investment and that his father had done well with real estate.
Plaintiff also consulted a realtor with expert knowledge of commercial properties in the area. The realtor advised that the lease on the property was a standard one commonly used by supermarkets at that time, and that the location was one consistent with the trend of stores to go out of the city to shopping areas. The lease on this property has become oppressive and is a large factor creating the problems in this case. The lease began in 1957 and was for a period of 50 years. By its terms the rent paid is in decreasing amounts: $27,600 for 15 years, $18,000 for 5 years, $13,250 for 5 years, and $10,800 for each succeeding 5 years at the renter's option to continue. Because of increasing inflation over the years and increased taxes, together with insurance and maintenance costs, the costs of operation now exceed income. This had substantially effected the market value of the property.
It is doubted by this court that plaintiff ever re-read the terms of the will after it was probated. He thought he was fully familiar with it and never searched it to analyze *443 his authority, for if he had he certainly should have known, as the Supreme Court held in Munger, supra, that securities do not include real estate. If he had had no prior association with the will, he would have had to read it and probably would have questioned his authority to purchase this property. He would then have either abandoned the idea or probably, in light of the interest of the income beneficiary in purchasing the property, have gone into court for authority to buy. With the greater wisdom with which hindsight endows us, it is simple now to charge plaintiff as a grossly negligent fiduciary. Although he was far from prudent, the court holds that his actions, while negligent in relation to the high standards required of a fiduciary, do not amount to gross negligence. As such this case does not fall within the ambit of those cases which hold that if the insured is guilty of fraud, deception or the performance of an illegal act, he is excluded from title insurance coverage because he "suffered or created" the defect. Although negligent, plaintiff's actions were well intentioned and in good faith, and they do not come within the exclusion clause of the title insurance policy.
Finally, plaintiff contends that West Jersey is estopped from arguing that his loss was not covered by the express terms of the policy. He contends that West Jersey raised the question of his capacity to invest in real estate by the addition, at the top of the application, of "Examiner  please check with Mr. Tobin [then defendant's legal officer] as to the capacity of Mr. Keown to take title as Successor Trustee."
Plaintiff further contends that this inquiry was answered in the affirmative. On the morning of the day of closing, the report of title had not been received. As earlier recited, plaintiff's secretary called the title examiner to ascertain its status. Immediately after the conversation she transcribed her notes and gave plaintiff the following memorandum:
The report of title is being typed and it will take about an hour and a half to finish typing it. I asked that they send a copy here *444 when it is finished which they said they would do. I talked with Mr. Stepler, the examiner, as to what exceptions showed up as far as the buyer is concerned.
He talked about your right to take title. He said that he is quite sure it is O.K.; that he had been to the Surrogate's Office and examined everything. However, he said that Ray Heston wanted a legal opinion and Ed Tobin was requested to give one. He has given an opinion and he is satisfied that you have the right to take title. They are insuring you as Succeeding Trustee as owner.
Plaintiff testified that in reliance on this opinion and the subsequent report of title which raised no exception as to his right to take title to the property in question, he proceeded to settlement at the offices of West Jersey that afternoon. At trial Tobin testified that he did not remember giving an opinion, either written or oral, in this matter, and he remembered no discussion with Stepler. He further stated that if he had been asked for an opinion, then or now, he would say that plaintiff could not take title because he was under a disability  under the will he did not have the authority to acquire real estate. Plaintiff testified that if he had been told on June 18, 1963 that Tobin thought he couldn't buy the real estate, he would not have concluded settlement.
Estoppel is an equitable doctrine of substantive law. Equitable estoppel is founded on justice and good conscience and requires that one may not repudiate an act done or position assumed where that course would work injustice to another who, having the right to do so, had relied thereon. Mattia v. Northern Ins. Co. of New York, 35 N.J. Super. 503, 510 (App. Div. 1955) (clerk for insurer's agent failed to ask applicant whether auto was encumbered although applicant was willing to supply the information held insurer under doctrine of equitable estoppel could not claim policy was void due to omission in the application blank and certificate); Summer Cottagers' Ass'n of Cape May v. City of Cape May, 19 N.J. 493 (1955). The object of equitable estoppel is to prevent the unconscientious and inequitable assertion or enforcement of *445 claims which might have existed or been enforceable by other rules of law, unless prevented by the estoppel, and its practical effect is to create and vest opposing rights in the party who obtains the benefit of the estoppel. Thomas v. Camden Trust Co., 59 N.J. Super. 142, 150 (Law Div. 1959). In short, equitable estoppel requires (1) detrimental reliance, (2) upon false representation (3) of a material fact.
The court concludes that the memorandum written by Miss Morris, whose veracity is not questioned by anyone, goes further than telling plaintiff that the title search revealed he was taking clear title of record. It advised that a legal opinion from one who was expert in real estate law said he had "the right to take title * * * as Succeeding Trustee." Whether or not Tobin actually gave this opinion, it was related to Miss Morris, an agent of plaintiff, by Stepler, an agent of defendant. It was a material fact, was false, and plaintiff relied on it to his detriment. Therefore, defendant is estopped from denying coverage under its policy to plaintiff.
For all of the above reasons the court holds that defendant is liable to plaintiff for all reasonably foreseeable damages, Hadley v. Baxendale, 9 Exch. 341, 156 Eng. Repr. 145 (1854), which plaintiff has suffered as a result of taking title as successor trustee to the Egg Harbor property.
The amount of damages has not been litigated before this court, and since the accounting exceptions as found by Judge Brown are now on appeal, the determination as to the exact amount owing plaintiff will be held pending that decision. Any present decision on damages would be contingent and speculative.