## Ely v. Munshower

*R. Kirkland McQuiddy*, for plaintiffs.
*John D. Trainer*, for defendants.

BECKERT, *P.J.*, December 20, 1977 — This action in assumpsit and trespass has been instituted by Thomas H. Ely and Joan M. Ely, his wife (plaintiffs), purchasers of real estate known as lot no. 10 of a development designated as "Woodfield" located in Buckingham Township, Bucks County. Original defendants are John G. Munshower and J.G.M. Land Development, Inc., the contractor and builder, respectively, of a home situated on the above lot and the Title Insurance Corporation of Pennsylvania (title company) the latter having issued a title insurance policy on the purchased realty.

The foundation of plaintiffs' claim is that their adjacent landowners, James W. and Carole Ann Moyer (Moyers), have their home located 19 feet on plaintiffs' property. Plaintiffs also claim that part of the sewage drain field of Benito T. and Patricia A. Ventresca (Ventrescas), also adjacent landowners, has been constructed partly on their property.

Plaintiffs' claim against the builder and contractor is based on the alleged breach of the agreement of sale and negligence in construction of all three homes (plaintiffs, Moyers and Ventrescas) so as to create the encroachment on the land of plaintiffs. Plaintiffs claim against the title company is based on the title policy and negligence for "failing to notice" the encroachments of Moyers and Ventrescas upon the realty of plaintiffs.

Defendant contractor and builder have joined Action Construction, Inc. (Action) as an additional defendant, contending that it, Action, is jointly liable or liable over to plaintiffs because its agents staked the location of the three houses.

Preliminary objections have been filed by the contractor and builder, contending therein that the Moyers and Ventrescas are indispensable parties as plaintiffs to this action and by the title company raising the failure of plaintiffs to give the required notice to plead; failure to attach certain written instruments (agreement of sale and written building specifications are referred to in plaintiffs' complaint as Exhibit A and B but were allegedly not attached to the complaint served on the title company and the title policy issued by this defendant is not attached to the pleadings) and, finally, a motion in the nature of a demurrer.

We will first consider the preliminary objection of defendant-contractor and builder.

Pa.R.C.P. 2227 provides:

"(a) Persons having only a joint interest in the subject matter of an action must be joined on the same side as plaintiffs or defendants.

"(b) If a person who must be joined as a plaintiff refuses to join, he shall, in a proper case, be made a defendant or an involuntary plaintiff when the substantive law permits such involuntary joinder."

With the above language in mind let us examine the present litigation.

As stated earlier, this is not an action in equity but one sounding in assumpsit and trespass seeking to recover from defendant money damages. The assumpsit action is bottomed on the breach of agreement of sale by defendants to convey to plaintiffs "said premises free and clear of all liens, encumbrances and easements and further requiring that the title to be conveyed to the plaintiffs would be good and marketable . . . as will be insured by any reputable title insurance at the regular rates." Therefore, in order to require the joinder of the

Moyers and/or the Ventrescas, it would be necessary to conclude that they or either of them were joint contractees or obligees with the present plaintiffs, for in actions ex contractu such a finding is necessary before a compulsory joinder is required. See 2 Standard Pa. Pract. 353, §50 and cases cited thereat.

We have very little difficulty in concluding that neither the Moyers nor Ventrescas are, based upon the instant pleadings, joint contractees with the present plaintiff. While either the Moyers or Ventrescas *may* have entered into a similar agreement of sale with the present defendants, even if this be the case, we repeat this fact has not been pleaded, but, even so, we fail to see how this would place them in the category of an indispensable party. While plaintiffs' position, if successfully proven, would have the effect of determining that the Moyers or Ventrescas are, in fact, encroaching on their land, plaintiffs are not attempting by this litigation to remove their neighbors therefrom but are seeking to recover from defendant-builder and contractor the dollar damage plaintiffs have sustained by virtue of their not receiving the realty which they bargained for.

The note of the Procedural Rules Committee to Rule 2227(b) provides that, under present rules of substantive law, proper cases for joining a party as an involuntary plaintiff exists in only the four instances where:

"(1) The action is in rem.

"(2) The unwilling person can be regarded as estopped by his conduct from objecting to the prosecution of the suit without his consent.

"(3) The willing plaintiff and the unwilling persons are joint tenants or tenants by the entireties

and the action is brought to preserve or recover the jointly owned property or damages for injury to such property.

"(4) The action is equitable in nature and no recovery of money damages is sought."

The only instance here applicable would be the fourth, but, in our present situation, money damages are, in fact, sought.

As to the trespass phase, we have even less difficulty in deciding against defendants' position. The law is eminently clear that an injured party may sue one, all or any number of the tortfeasors responsible for its injury: O'Malley v. Philadelphia Rapid Transit Company, 248 Pa. 292, 294, 93 Atl. 1014 (1915); Hughes v. Pittsburgh Transportation Co., 300 Pa. 55, 59, 150 Atl. 153 (1930). Here, there is even a more cogent reason why the Moyers and Ventrescas need not be joined—plaintiffs are not contending that they are tortfeasors—it is not plaintiffs' theory of this instant action that either of his neighbors are guilty of any wrongdoing, but to the contrary, they, the neighbors, so contend plaintiffs, due to the negligence of defendants are also placed in the position where they too *may* have suffered damages and they *may*, if they so desire, in the future, institute action against defendants for the damages wrought upon them by defendants' misconduct.

We, therefore, have no hesitancy in dismissing and overruling the preliminary objections of defendants, John G. Munshower and J.G.M. Land Development, Inc.

Turning now to the preliminary objections lodged by the title company. We find that we need only give attention to the title company's preliminary objection in the nature of a demurrer.

Schedule B of the title company's policy states:

"This policy does not insure against loss or damage by reason of the following: . . .

"2. Any variation in location and dimensions, conflicts in boundary lines, encroachments, overlaps, easements not of record and any other objections which a survey made in accordance with 'Minimum Standard Detail Requirements for Land Title Surveys' as adopted by American Title Association and American Congress on Surveying & Mapping would disclose."

Plaintiffs are now stating that we should ignore this exemption and provide them with coverage in spite of the above language.

It is well recognized that a title insurance company can except from coverage such discrepancies by the terms and conditions of its policy. A title insurance company binds itself absolutely to indemnify the policyholder for any loss resulting from defect in title, no matter what the cost, unless the particular defect is exempt by the policy: Keown v. West Jersey Title and Guaranty Company, 147 N.J. Super. 427, 371 A. 2d 370 (1977). While a title insurance policy is subject to the same rules of construction as are other insurance policies (Hansen v. Western Title Insurance Company, 33 Cal. Rep. 668 (D.C.A. 1963)) and, therefore, is to be liberally construed in favor of the insured, a court is required to determine the intentions of the parties from the language in the policy, giving effect so as to give reasonable meaning to its terms: Feldman v. Urban Commercial, Inc., 78 N.J. Super. 520, 527, 189 A. 2d 467 (1963).

The case of Banas v. Heiney, 66 D. & C. 2d 286 (1973), is on point. This suit was brought against a title insurer by plaintiff because a survey made

after the issuance of the policy revealed that the realty purchased and insured contained only 16 acres, rather than 33 acres as represented by the seller. The title policy excepted from coverage such defect, by a provision similar to that found in the instant policy, which exception in Banas read as follows:

"'Any variation in location or dimensions and any other objections and easements which a survey for conveyance made by an official surveyor should disclose, or which are visible on the ground or are known to the assured.'"

The title company's preliminary objections to the complaint were sustained by the Carbon County Court of Common Pleas and in doing so the court noted:

"Since plaintiff does not allege any facts to show that . . . the provisions set forth . . . excluding insurance coverage for inaccuracy of description and dimensions and any other objection, easements, or encumbrance . . . are not binding upon her, defendants are entitled to have the demurrer sustained." Banas at page 289.

We see no reason why we should not follow the holding in the Banas case, when dealing with the assumpsit aspect of plaintiffs' complaint.

We do not find that plaintiffs can extricate themselves from a demurrer by also attempting to assert their claim in trespass for "negligence and carelessness in failing to notice . . . blatant title defects." This we do not believe makes their complaint any more actionable. A cause of action in negligence is based upon a breach of duty and where no duty exists there can be no recovery: John B. White, Inc. v. Providence Washington Insurance Co., 329 F. Supp. 300 (E.D. Pa., 1971). See, e.g.,

Dorn v. Leibowitz, 387 Pa. 335, 127 A. 2d 734 (1956).

The pleadings and exhibits attached thereto further reveal that plaintiffs knew, or should have known, that defendant title company was insuring only a record title search of their property and not a survey. Plaintiffs' agreement of sale with J.G.M. provided that:

"3. The Owner shall furnish plot plans and provide a physical survey by a Registered Surveyor, so that the builder may accurately locate the proposed dwelling according to the Owner's instructions."

We, therefore, find it difficult to accept the proposition that plaintiffs can, in good faith, now claim that the title company, despite its policy exclusion, had any obligation to them in this regard and, as no obligation or duty existed, no negligence could be imposed upon them for not carrying out a nonexistent duty.

We also find support in decisions from other jurisdictions. In Kuhlman v. Title Insurance Company of Minnesota, 177 F. Supp. 925 (W.D. Mo., 1959), the insured commenced an action to recover damages sustained by him by reason of the location of a boundary line 5.25 feet west of where the insurer believed the boundary line was located. This error in location of the boundary line was discovered when the adjacent landowner had its lot surveyed. Both the deed and a title insurance policy described the lot dimension in metes and bounds. The title company contained the following exception:

"Exceptions

"against which the company does not, by this policy insure:

". . .

"3. Facts which would be disclosed by an accurate survey of the premises herein described."

Plaintiff-insured contended that it was the responsibility of defendant title company to determine the correctness of the description of the land. The court, at page 926, answered this contention by the use of the following language:

"It is very apparent that the defendant [title insurance company] was under no obligation to cause a survey to be made prior to issuing the policy, and that it insured the title only to such property as plaintiffs actually acquired. There can be no other reason for the exclusionary clause in its contract, and such exclusionary clause is binding upon the plaintiffs, and they are not entitled to recover."

In Contini v. Western Title Insurance Company, 40 Cal. App. 3d 536, 115 Cal. Rep. 257 (C.A. 5, 1974), an action was instituted under a title insurance policy wherein plaintiff claimed that a survey taken after the policy was issued revealed that the property contained 35 less acres than the insured purchased and that, as a result, the boundary line was not where the insured thought it to be. This policy, too, excluded losses suffered by the insured because of "'discrepancies, conflicts in boundary lines, shortage in area, encroachments, or other facts which a correct survey would disclose, and which are not shown by the public records'."

The court there held that plaintiff-insured was not protected by the title policy from matters that were dependent upon a survey or an equivocal inspection of the property, unless the policy provides for extended coverage or the insured requested special endorsement. As the insured had failed to obtain either of these as was the case with plaintiff in the matter before us, the court held the insurer was

not liable. See also Stearns v. Title Insurance and Trust Company, 18 Cal. App. 3d 162, 95 Cal. Rep. 682 (C.A. 5, 1971).

The title policy in the case now before us describes plaintiffs property in metes and bounds. Plaintiffs' claim is based upon a survey made after the insurance policy was issued. It is this survey that reveals the alleged encroachment on plaintiffs' property, and it is this encroachment which is the basis of this action. This is exactly the type of coverage excepted by defendant title company from insurance coverage. Although plaintiff contends that it was a title defect of this kind for which they sought to protect themselves with title insurance, plaintiffs failed to admit that they had a duty to obtain a survey of their land prior to having it conveyed or to procure extended coverage or special endorsement to cover this contingency. In no way was the title company obligated to have a survey made. No duty was placed upon them or bargained for by plaintiffs. As no duty existed, there could be no negligence in failing to exercise that duty. The duty was that of plaintiffs and, having failed in that regard, plaintiffs cannot now hold the title company liable for the alleged encroachment of adjoining landowners.

Although we do not believe that plaintiffs can amend their complaint to cure the demurrer, that is, to plead a cause of action against the title company, we nevertheless will allow them 20 days from this date to do so and, accordingly, we enter the following

## ORDER

And now, December 20, 1977, the preliminary objections of defendants, John G. Munshower, in-

dividually and trading as J.G.M. Construction Co., and J.G.M. Land Development Inc., are overruled and denied and leave is granted to file their answer within 20 days from the date hereof. The Title Insurance Corporation of Pennsylvania's preliminary objections in the nature of a demurrer are sustained, leave being granted, however, to plaintiffs to file an amended complaint within 20 days from the date hereof, and, in default thereof, plaintiffs' action as to the Title Insurance Corporation of Pennsylvania shall be dismissed with prejudice by the prothonotary upon praecipe from defendant.