161 N.J. Super. 19 (1978)
390 A.2d 715
WILLIAM S. KEOWN, PLAINTIFF-RESPONDENT,
v.
WEST JERSEY TITLE AND GUARANTY COMPANY, A NEW JERSEY CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 13, 1978.
Decided July 7, 1978.
*22 Before Judges MATTHEWS, CRANE and ANTELL.
Mr. Joseph S. Georgiana argued the cause for appellant (Messrs. Capehart & Scatchard, attorneys).
Mr. M. Gene Haeberle argued the cause for respondent.
Mr. John R. Weigel argued the cause for amicus curiae New Jersey Land Title Insurance Association.
PER CURIAM.
The facts of this case are set forth in the trial judge's opinion, which is reported at 147 N.J. Super. 427, 431-433.
The trial judge decided that plaintiff's lack of authority to invest in real estate created a defect in his title and rendered it unmarketable, 147 N.J. Super. at 436; that the exemption for defects created by the insured did not cover *23 accidental or innocent conduct of the insured, so conduct of this type causing a defect would not prevent recovery on the policy, 147 N.J. Super. at 439; that plaintiff's conduct was no worse than simple negligence, so it was not conduct that would exempt the resulting defect from coverage, 147 N.J. Super. at 443, and that the title company was estopped from denying liability because it represented to Keown's secretary on the telephone that Keown had the "right to take title." 147 N.J. Super. at 445.
A marketable title is one that is relatively free from doubt, such that in a suit for specific performance a court would compel the prospective purchaser to accept the title. 4 American Law of Property § 18.7 at 670 (1952). If it is reasonably probable that the purchaser would be exposed to litigation not of a frivolous nature concerning the title, or would have to bring an action to quiet title, then specific performance would be denied to the prospective seller and the title would be considered unmarketable. Tillotson v. Gesner, 33 N.J. Eq. 313, 326-327 (E. & A. 1880); Gaub v. Nassau Homes, Inc., 53 N.J. Super. 209, 223 (App. Div. 1958).
Marketable title has also been defined as a title free from reasonable doubt, that which a reasonable buyer would be willing to accept, or which is "salable." Bier v. Walbaum, 102 N.J.L. 368, 370 (E. & A. 1926).
When a trustee breaches his trust by purchasing property that is not within his authority to purchase, the beneficiaries have the options of compelling him to replace the trust funds with interest or to hold the property subject to the trust. 3 Scott, Trusts (3 ed. 1967), § 210 at 1695-1696; Restatement, Trusts 2d, § 210 (1959). If the beneficiaries charge the trustee with the amount he spent, they can enforce an equitable lien on the property as security for their claim. However, this does not prevent the trustee from disposing of the property. A trustee takes the risk of acting ultra vires, and if he does so he will be held personally liable for any loss to the trust. Dickerson v. Camden Trust Co., 140 N.J. Eq. 34, 44 (Ch. 1947), mod. on other grounds 1 N.J. *24 459 (1949); Conover v. Guarantee Trust Co., 88 N.J. Eq. 450, 458-459, 463 (Ch. 1917), aff'd 89 N.J. Eq. 584, 585 (E. & A. 1918). Because he is personally subject to liability for any losses, he is not required to hold the property in case it might be advantageous for the trust, but is permitted to dispose of it. 3 Scott, op. cit., § 210 at 1697-1698. Under those circumstances it can hardly be said that a trustee in this position will be unable to pass good title.
A trustee's lack of authority under the trust instrument to purchase real estate does not void the conveyance to him. We see no reason, then, that his title should be impaired. Because of the possibility of an equitable lien held by the beneficiaries it might be prudent to arrange for them to release their claims by signing the deed, but such does not make the title unmarketable. The beneficiaries are not adverse parties but are the beneficial owners through the trustee. Since they challenged the trustee's powers in court and received an order surcharging him, they have obviously chosen the option of repudiating the purchase and cannot make a claim on the property at a later date.
All of the cases we have found in which unmarketability of title resulted involved a defect which would give rise to some kind of adverse claim on the part of third parties. In Gaub v. Nassau Homes, Inc., 53 N.J. Super. 209 (App. Div. 1958), the description in the deed could be read two ways, making a difference of 25 acres in the plot, and an heir of a grantor far back in the chain of title could claim that questionable acreage. In United States v. Roebling, 244 F. Supp. 736, 744 (D.N.J. 1965), the seller's deed was unclear and could mean that there was a reversionary interest in an earlier grantor and that the prospective seller did not have a fee simple. Gravino v. Gralia, 18 N.J. Super. 241 (Ch. Div. 1952), involved restrictive covenants on the use of the property which might be enforced by third parties, and Bier v. Walbaum, 102 N.J.L. 368 (E. & A. 1926), involved encroachments by the property in question and such encroachments were nuisances under local ordinance.
*25 We conclude that the trustee's lack of authority did not make his title to the property unmarketable, and the risk involved in this case was not the type against which the trustee had insured.
The trial judge also decided that the defect was not created by the plaintiff in the sense of the policy's exclusion. She found that defects brought about by the accidental or innocent conduct of the insured were not created by the insured for purposes of interpreting the policy. 147 N.J. Super. at 443.
In the only New Jersey case interpreting such a clause it was held that the word "create" connotes "the idea of knowledge, the performance of some affirmative act by the insured, a conscious or deliberate causation." Feldman v. Urban Commercial, Inc., 87 N.J. Super. 391, 404 (App. Div. 1965). There the insured had taken part in an "unconscionable scheme" and had taken affirmative action which rendered his mortgage unenforceable so he was barred from collecting on the insurance policy. 87 N.J. Super. at 409; Feldman v. Urban Commercial, Inc., 78 N.J. Super. 520, 532 (Ch. Div. 1963), aff'd 87 N.J. Super. 391 (App. Div. 1965). The court distinguished the case from Hansen v. Western Title Ins. Co., 220 Cal. App.2d 531, 33 Cal. Rptr. 668, 98 A.L.R.2d 520 (D. Ct. App. 1963), noting that the defect in that case was caused by inadvertence rather than conscious causation. 87 N.J. Super. at 408-409.
In Hansen the insureds' attorney had so badly drafted an option agreement that he caused the defect in title because it provided that the land would be reconveyed if not developed by a certain time. The insureds were apparently unaware of this interest and were assured by the attorney and the title company that the seller had no interest in the properties. The court held the defect not to have been created by the insured. Therefore the policy was found to cover his loss. It limited its holding to circumstances where the insured did not intentionally produce the claim and the insurance company had an opportunity to know of the defect.
*26 In the other case where the insured was held not to have "created" the defect, the title problem resulted from the operation of law and not really from an affirmative act of the insured at all. A bank's mortgage was invalidated as a preference but the bank had not intended to establish a preference. First National Bank & Trust Co. v. New York Title Ins. Co., 171 Misc. 854, 12 N.Y.S.2d 703 (Sup. Ct. 1939), cited in Annotation, 98 A.L.R.2d 527, 530 (1964).
All the other cases that were found interpreting this clause involved some fraudulent or inequitable behavior by the insured and, accordingly, he was found to have created the defect: Ginger v. American Title Ins. Co., 29 Mich. App. 279, 185 N.W.2d 54, 56 (Ct. App. 1970) (insured took title fraudulently to assist in evasion of grantors creditors); Conway v. Title Ins. Co., 291 Ala. 76, 277 So.2d 890, 892 (Sup. Ct. 1973) (insured kept occupant of property from discovering how to clear his title and she knew of this defect); Lawyers Title Ins. Corp. v. Research Loan & Invest. Corp., 361 F.2d 764, 769 (8 Cir.1966) (insureds had knowledge of specific improvements made to the property by previous owners and should have assumed there were encumbrances from the financing of them and insureds by deed assumed all encumbrances); Taussig v. Chicago Title & T. Co., 171 F.2d 553 (7 Cir.1948), cited in Annotation, 98 A.L.R.2d 527, 528 (1964) (insured cotrustee had acted in bad faith and managed to become the sole beneficiary of one trust); Rosenblatt v. Louisville Title Co., 218 Ky. 714, 292 S.W. 333 (Ct. App. 1927), cited in Annotation, 98 A.L.R.2d 527, 528 (1964) (insured had used undue influence and fraud to gain title); Brick Realty Corp. v. Title Guarantee & Trust Co., 161 Misc. 296, 291 N.Y.S. 637 (N.Y.C. Ct. Sp. Term 1936), cited in Annotation, 98 A.L.R.2d 527, 529 (1964) (insured had allegedly been involved in fraudulent scheme to deprive his wife of her dower rights).
The only New Jersey case on the subject speaks of knowledge, seeming to negate the negligent creation of the defect. In addition, we believe a determination that a *27 negligent causation of the defect does not constitute "creation" within the meaning of the exclusionary clause would be consistent with the general rules for interpreting insurance contracts. The language of the policy should be liberally construed in favor of the insured and strictly construed against the insurer. Sandler v. N.J. Realty Title Ins. Co., 36 N.J. 471, 479 (1962); Feldman v. Urban Commercial, Inc., supra, 78 N.J. Super. at 527.
Plaintiff also argues that defendant should be estopped from denying liability. The facts disclose that when plaintiff had not received title searches by the morning on the day of closing (June 18, 1963) he had his secretary call the title company to check on them. She spoke with the examiner who had been assigned to the case. After her conversation with him, she wrote a memorandum to Keown which inclnded the following paragraph:
He talked about your right to take title; he said that he is quite sure it is o.k.; that he had been to the Surrogate's office and examined everything. However, he said that Ray Heston [an officer of the title company] wanted a legal opinion and Ed Tobin was requested to give one. He has given an opinion and he is satisfied that you have the right to take title. They are insuring you as Succeeding Trustee as owner.
The trial judge found that the doctrine of equitable estoppel would prevent the title company from denying liability under its policy. 147 N.J. Super. at 445. She did not, however, make an explicit finding that the plaintiff had the right to rely on this statement. She did find that plaintiff relied on the telephone message to his detriment. 147 N.J. Super. at 445.
Even if the message could be read as representing that plaintiff had the authority under the will to purchase the property, such could not have had an effect on what was insured. Even if the company wanted to assure itself and plaintiff that plaintiff had the right to purchase real estate for the trust, this statement does not indicate that the *28 insurance company was warranting that right as it warranted title.
In addition, we do not believe that plaintiff had a right to rely on that message. He is an attorney who apparently did not examine his powers as trustee at the time of purchase. Secondly, the telephone message is too ambiguous. It could easily have referred to the insured's properly assuming the position of successor trustee. The message should not have been read by an attorney to state clearly that he had the necessary authority under the will. The message was written by a nonlawyer (although it was someone accustomed to working in a lawyer's office) and no written legal opinion on the matter was ever received or requested. Plaintiff was not excusably ignorant of the true facts but was negligent as found by the trial judge, and the company probably did not have reason to believe that an attorney acting as executor and trustee would rely on a telephone message as to his own position and authority.
We do not find a case for equitable estoppel.
Reversed.