NORWEGIAN EVANGELICAL FREE CHURCH, Respondent, v. MICHAEL MILHAUSER, Appellant.

(Argued October 18, 1929; decided November 19, 1929.)

*John J. McManus* for appellant. The title to the premises in question and the title of the defendant thereto is good and marketable. (*Matter of People* [*Melrose Ave.*], 234 N. Y. 48; *Ruff* v. *Gerhardt*, 73 App. Div. 245; *Greenblatt* v. *Hermann*, 144 N. Y. 13; *Ferry* v. *Sampson*, 112 N. Y. 415; *Cambrelling* v. *Purton*, 125 N. Y. 610; *Hamershlag* v. *Duryea*, 58 App. Div. 288; 172 N. Y. 622; *Matter of Clarke*, 131 App. Div. 688; *Ettenheimer* v. *Heffernan*, 66 Barb. 374; *Luhns* v. *Eimer*, 80 N. Y. 171; *Baker* v. *Oakwood*, 123 N. Y. 16; *Wanser* v. *De Nyse*, 125 App. Div. 209; 192 N. Y. 537.)

*Rosalie Ulrich* and *Milton M. Eisenberg* for respondent. The People of the State of New York did not acquire title through adverse possession and held the property subject to the rights of lawful heirs. (Civ. Prac. Act, §§ 37, 38.) A purchaser of property is entitled to a clear and marketable title. (*Fleming* v. *Burnham*, 100 N. Y.

1; *Moore* v. *Williams*, 115 N. Y. 586; *Vought* v. *Williams*, 120 N. Y. 253; *McPherson* v. *Schade*, 149 N. Y. 16; *Brokaw* v. *Duffy*, 165 N. Y. 391; *Kilpatrick* v. *Barron*, 125 N. Y. 751.)

CARDOZO, Ch. J.   The action is by a vendee to recover his down payment and expenses on the ground that the vendor is unable to tender a marketable title.

William A. Kinnilly died seized of this property in April, 1868.   He was born in England, and there is no evidence that he had ceased to be an alien at the time of his death. His will devised his residuary estate, including the land in suit, to trustees for charitable uses.   By a judgment of the Supreme Court, entered in December, 1870, the trusts were declared void; there was a declaration that the testator, according to the evidence then appearing, had not left any heirs capable of inheriting his estate; and this was followed by an adjudication that title to the property had passed to the People of the State of New York, " subject to the claims and rights of any lawful heirs or next of kin of said deceased who may be hereafter discovered or appear." ᵃ A receiver was appointed to collect the rents and profits until the executors had accounted.   At the close of the accounting there was a decree discharging the receiver, and directing the delivery of possession to the Commissioners of the Land Office, or their authorized . agent, as the representatives of the State, and possession was so delivered in December, 1873.

In the suit to determine the validity of the charitable trusts, it was shown that by advertisement and otherwise the executors had made diligent inquiry for heirs and next of kin, and that numerous persons had submitted claims. These claims were litigated by proceedings at the foot of the decree and adjudged to be without foundation. In 1882 the same claimants and others were permitted to reopen the proceedings; and thereafter, in 1892, judg-

ment was entered dismissing their several claims, and adjudging once again that the title was in the State. Other proceedings begun about the same time and afterwards (cf. *Aalholm* v. *People*, 211 N. Y. 406) were litigated with the same result.

In January, 1911, by letters patent duly executed, the Commissioners of the Land Office conveyed the interest of the State in the real property in question to Mary F. Milhauser, who in turn conveyed to the defendant. An action was begun by her in 1911 under the provisions of the Torrens Act to register her title, in which the unknown heirs, if any, of William A. Kinnilly were joined as defendants (Real Prop. Law [Cons. Laws, ch. 50], art. 12). In that action, one Mary Byrne, formerly Mary Kinneally, appeared by attorney in August, 1911, and claimed to be an heir, though in the earlier litigation the claim of Mary Kinneally had been considered and dismissed. The Torrens suit was allowed to lapse and an order discontinuing it was entered in 1925, but without notice to Mary Byrne, who could not be found, and whose attorney was then dead.

The contract of sale between the plaintiff as vendee and the defendant Milhauser as vendor was made in October, 1923. The trial judge by a decision in December, 1926, held the title to be marketable, and dismissed the complaint. The Appellate Division reversed and gave judgment for the plaintiff.

Sixty-one years and more have passed since the death of William A. Kinnilly in April, 1868. No heirs have yet been found. Such claimants as have appeared, with the possible exception of Mary Byrne, have been found to be impostors. The record now before us is too fragmentary to enable us to say with certainty that the judgment is conclusive upon all of them within the doctrine of *res judicata*. Even so, the many years that have passed without revival of the claims, the long and unbroken silence and acquiescence, have cut the

heart out of the possibility of renewal, and robbed it of its reality as a menace to the peace and quiet of a purchaser. The claim of Mary Byrne, who was formerly Mary Kinneally, is indeed of later date, but even she has slept upon her rights since 1911, when she served her answer in the suit to register the title. Identity of name, moreover, raises a presumption that she is the same Mary Kinneally who asserted her kinship nearly forty years ago, and was then barred from the share that she was claiming as her own.

We think the chance that there is a lawful heir of William A. Kinnilly capable of inheriting under the law governing inheritance as it stood in 1868 and capable to-day of making proof of his kinship, has become after all these years and all these repeated inquisitions a mere possibility, which ought no longer to impose a cloud upon the title. The law assures to a buyer a title free from reasonable doubt, but not from every doubt (*Crocker Point Assn.* v. *Gouraud*, 224 N. Y. 343; *Goldberg* v. *McCord*, 251 N. Y. 28). If " the only defect in the title " is " a very remote and improbable contingency," a " slender possibility only," a conveyance will be decreed (*Cambrelleng* v. *Purton*, 125 N. Y. 610, 616; *Ferry* v. *Sampson*, 112 N. Y. 415, 418; *Greenblatt* v. *Hermann*, 144 N. Y. 13, 20). The rule has been applied in situations closely parallel to the one before us now. Thus, in *Matter of the Trustees of the Protestant Episcopal Public School* (31 N. Y. 574) a statute authorized a sale of a testator's land, but excepted from the conveyance the reversionary interest of his heirs, if any there were found to be. Because of the possible existence of such heirs, the purchasers were unwilling to complete the purchase. This court recognized the possibility, though about sixty years had gone by, but overruled the purchasers' objection. " The existence of heirs is so improbable that it is not to be considered as prejudicing the title " (p. 588). So, in *Ferry* v. *Sampson* (*supra*)

a title was held marketable where a former owner had been absent and unheard of for forty years, though the possibility remained that he was still alive. "The rule is not absolute that a disputable fact, not determined by the judgment, is in every case a bar to the enforcement of the sale. It depends in some degree on discretion" (p. 418). A like principle was applied in *Greenblatt* v. *Hermann* (*supra*). "It is a possibility merely that * * * heirs may exist" (p. 20). The cross-demand set up by Mary Byrne in the suit to register the title is now too stale, after all these years of abandonment, to prove without more, as a matter of "reasonable decent, probability" (ALDERSON, B., in *Cattell* v. *Corrall*, 4 Y. & C. Ex. 228, 237; Fry Spec. Perf. § 890) that a buyer upon taking title will find himself involved, either presently or hereafter, in the toils of litigation (*Simon* v. *Vanderveer*, 155 N. Y. 377, 382; *Hayes* v. *Nourse*, 114 N. Y. 595; *Alpern* v. *Farrell*, 133 App. Div. 278).

There is in all such controversies a penumbra where rigid formulas must fail. No test more definite can then be found than the discretion of the court, "to be carefully and guardedly exercised" (*Ferry* v. *Sampson*, *supra*) in furtherance of justice. In the exercise of that discretion, we declare this title marketable; the doubt too unsubstantial to place the purchaser in peril.

The judgment of the Appellate Division should be reversed, and that of the Special Term affirmed, with costs in the Appellate Division and in this court.

POUND, CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment accordingly.