JAMES L. CONKLIN AND MARIE F. CONKLIN, PLAINTIFFS-APPELLANTS, v. RICHARD T. DAVI AND GERALDINE DAVI, HIS WIFE, DEFENDANTS-RESPONDENTS.

Argued October 3, 1977—Decided June 6, 1978.

*Mr. Louis Ruprecht* argued the cause for appellants (*Messrs. Ruprecht* and *Graham,* attorneys; *Mr. Ruprecht* on the brief).

*Mr. Morton L. Ginsberg* argued the cause for respondents.

The opinion of the court was delivered by

MOUNTAIN, J. Plaintiffs contracted to sell and convey to defendants a residential property in Ridgewood. The purchasers refused to consummate the sale, alleging defects

in title and misrepresentations on the part of the sellers. Plaintiffs instituted an action for specific performance; defendants counterclaimed for rescission. Before the trial commenced, plaintiffs abandoned their claim for specific performance, and the case proceeded solely as an action on the counterclaim of the defendants-purchasers, seeking rescission, in effect to secure the return of the down payment.

At the conclusion of the purchasers' case, the court granted the sellers' motion for judgment. The purchasers appealed, and the Appellate Division, in an unreported opinion, reversed the judgment of the trial court. Instead of remanding for a new trial, however, the Appellate Division ordered that judgment be entered in favor of the purchasers. The sellers moved for a rehearing. They pointed out that since the trial court had granted their motion for judgment at the conclusion of the purchasers' case, they had had no opportunity to present a defense to the purchasers' rescission claim. The Appellate Division denied the motion for a rehearing, adhering to its position that the purchasers were entitled to judgment. Although we agree with the Appellate Division that the trial court erred in granting vendors' motion, we think its entry of judgment in purchasers' favor to have been clearly erroneous. There must be a new trial.

The reversal by the Appellate Division was in effect a ruling that the trial court had erred in failing to deny the sellers' motion. Had the trial judge, rather than the Appellate Division, denied the motion, the sellers unquestionably could then have offered evidence to support their position. The relevant rule of court reads, in pertinent part:

A motion for judgment, stating specifically the grounds therefor, may be made by a party either at the close of all the evidence or at the close of the evidence offered by an opponent. *If the motion is made prior to the close of all the evidence and is denied, the moving party may then offer evidence without having reserved the right to do so.*

[*R.* 4:40–1; emphasis added]

The vendors cannot be denied this right simply because the adverse ruling emanated from an appellate court rather than the trial court.

Since there must be a new trial, it may be helpful for us to comment upon certain statements and contentions appearing in the opinions filed below as well as in the briefs. Because the sellers have had no opportunity to present their case, some of the facts we here assume necessarily rest upon inference if not conjecture.

It would appear that the validity of the title to a portion of the premises in question is sought to be sustained by the sellers upon a claim of adverse possession. The purchasers take the position that this being so, they were justified in repudiating the agreement; that the sellers could not force such a title upon them, but should have perfected the record title prior to the date of closing. This, they add, should have been done either by securing a deed from the present record title holder, or by means of an action to quiet title. While we readily concede that the sellers would have been well advised to have followed such a course, we do not agree that their failure to do so imperiled their position to the extent urged by the purchasers.

When a prospective seller's title is grounded upon adverse possession, or contains some apparent flaw of record, he has a choice of options. He may at once take whatever steps are necessary to perfect the record title, including resort to an action to quiet title, an action to cancel an outstanding encumbrance, or whatever other appropriate step may be necessary to accomplish the purpose. In the alternative he may, believing his title to be marketable despite the fact that it rests on adverse possession or is otherwise imperfect of record, choose to enter into a contract of sale, hoping to convince the purchaser or, if necessary, a court, that his estimate of the marketability of his title is justified. That is the course the sellers seem to have followed here. It must be borne in mind that this latter course is available only where the contract of sale does not require

the vendor to give a title valid of record, but provides for a less stringent requirement, such as marketability or insurability. Such is the case here. Of course "[a] buyer is entitled to the kind of title stipulated for in the contract of sale." *Friedman, Contracts and Conveyances of Real Property* (3rd ed. 1975) § 4.2, p. 259; *Lounsbery v. Locander*, 25 *N. J. Eq.* 554 (E. & A. 1874). Here the contract contained the following provision:

Title to be conveyed shall be marketable and insurable, at regular rates, by any reputable title insurance company licensed to do business in the State of New Jersey, subject only to the encumbrances hereinabove set forth.

It will be seen at once that while the title for which the purchasers have contracted must be marketable and insurable, there is no requirement that it be a perfect title of record. Many titles, imperfect of record, are nonetheless marketable. Justice Cardozo, then Chief Judge of the New York Court of Appeals, observed:

The law assures to a buyer a title free from reasonable doubt, but not from every doubt. . . . If "the only defect in the title" is "a very remote and improbable contingency," a "slender possibility only," a conveyance will be decreed. . . . [*Norwegian Evangelical Free Church v. Milhauser*, 252 *N. Y.* 186, 169 *N. E.* 134, 135 (1929)]

Incidentally, the law will imply that title must be marketable, even where the contract is silent upon the point. *La Salle v. La Pointe*, 14 *N. J.* 476, 479–80 (1954) and authorities cited. The purchasers are accordingly in error in insisting that nothing less than a good record title will suffice. A title that is marketable and insurable, though imperfect of record, will meet the terms of the contract.

Having thus chosen to rely upon marketability of the title to so much of their land as they claim by adverse possession, and upon it clearly appearing that the purchasers would not, under such conditions, perform the contract, sellers instituted an action for specific performance. As we have seen,

purchasers answered and filed a counterclaim for relief by way of rescission, seeking the return of their down payment as well as damages and attorneys fees. *N. J. S. A.* 2A:29–1. Thereafter, as we have also noted, the sellers abandoned their suit for specific performance, leaving for trial only the issue raised by the purchasers' counterclaim for rescission. Purchasers assert that they have been in some way improperly prejudiced by the sellers having abandoned their suit for specific performance. We fail to see how this can be. The criterion, in a case such as this, is the same whether the seller seeks specific performance or the purchaser sues for the return of his deposit. The determinative issue in each case is whether or not the seller had marketable title.

The criterion of a marketable title does not vary with the form of action in which it is an issue. In a situation wherein title is sufficiently doubtful to impel a court of equity to deny specific performance to the seller, the buyer may recover his downpayment in an action at law. [*Friedman, supra,* § 4.1, p. 258]

The purchasers also advanced the contention that the validity of the title must be assessed as of the specified closing date, and not at some later time. But established doctrine refutes this contention. Where, because of an alleged title defect, vendor and vendee litigate the issue, it will be the title as it exists at the time of final decree or judgment that will control, not the title the vendor may have had when the suit was commenced. *Gerba v. Milruske,* 84 *N. J. Eq.* 141 (E. & A. 1915); *Van Riper v. Wickersham,* 77 *N. J. Eq.* 232 (E. & A. 1910); *Joachim v. Belfus,* 107 *N. J. Eq.* 240 (Ch. 1930).

In all cases where the vendor seeks to force a title upon the vendee, it is the latter's position, not at the commencement of the suit, but at its termination, which is to be regarded. The question is, not what kind of a title the vendor has, but what kind of a title the vendee will get if the court of chancery or the court of errors and appeals, after reviewing the decree of the court of chancery, forces the offered title upon him. [*Barger v. Gery,* 64 *N. J. Eq.* 263, 268 (Ch. 1902)]

In the last-cited case Vice Chancellor Stevenson went on to say,

Where the alleged doubt in regard to the offered title relates to a matter of law, a decision of the court in the suit for specific performance undertaking to establish what the law is must, of necessity, have some effect either to strengthen or dispel the doubt. [*Id.*]

There the court granted specific performance, but noting that most of the evidence in support of complainant's otherwise defective title had been first brought forward during the trial, it denied complainant his costs.

In this case the evidence to support the offered title was not presented by the vendor to the vendee; a very important part of it was obtained by the vendor after this suit was commenced. [*Id.* at 277]

To recapitulate, in an action for specific performance by a vendor or for rescission by a vendee, where the issue is marketability of title, the vendor is entitled to a judgment if, at the conclusion of the suit, the court holds title to be marketable, even though the decision in favor of marketability rests upon facts adduced for the first time at trial or upon legal rulings made during the course of the proceedings.

▮ The purchasers have also advanced the contention that they were entitled to rescind the contract because, contrary to the contractual proviso, title was not insurable by a reputable title insurance company. Generally, provisions requiring title insurance as a condition precedent to acceptance of title are enforceable. *Mackenzie v. Mc Lean,* 20 *N. J. Super.* 517 (App. Div. 1952); *Brinn v. The Mennen Co.,* 4 *N. J.* 610, 615 (1950). This condition may already have been satisfied, for a Vice-President of New Jersey Realty Title Insurance Company testified to a willingness to insure the purchasers' possession against claims of third persons. Under these circumstances it would appear that the contractual condition had probably been met, but the point can be fully explored at the retrial.

■ As we have said, we agree with the Appellate Division that the trial court erred in granting the sellers' motion at the conclusion of the purchasers' case. The purchasers had shown that the sellers did not have record title to one tract of the entire parcel. The contract of sale provided that title must be marketable and insurable. It did not provide, however, as many such agreements do, that the sellers would be required to produce a clear title of record, without reliance upon adverse possession. It is well settled in New Jersey that title resting in adverse possession, if clearly established, will be held marketable. *Barger v. Gery, supra,* 64 *N. J. Eq.* 263 (Ch. 1902) ; *Day v. Kingsland,* 57 *N. J. Eq.* 134 (Ch. 1898) ; *Hummer v. Buerk,* 90 *N. J. Eq.* 97 (Ch. 1919). This rule represents the great weight of authority. See Annot., "Title by or through adverse possession as marketable," 46 *A. L. R.* 2d 544, 548 (1956). Accordingly, if the sellers could prove that they did in fact hold title to the tract in question by virtue of adverse possession, they would have met their contractual obligation, at least insofar as marketability is concerned. Although the trial judge indicated that he believed the sellers could readily establish title by adverse possession, they had not yet done so. Therefore their motion should have been denied and they should have been directed to go forward with their proofs.

■ We note that it is not necessary for the sellers to join as parties all possible claimants with outstanding interests, as would be the case in an action to quiet title. In many, if not most, cases of this sort the claimants who may hold adverse interests are not joined; very often they are not known. It follows, as the purchasers here correctly point out, that a judgment in the action will not be *res judicata* as to such claimants. And yet virtually all courts agree that in such a suit there may be, and often is, a judgment of marketability leading to affirmative relief by way of specific performance or to a denial of a vendee's claim to rescind. This result has been reached in a number of reported cases in this state. See, *e. g., Day v. Kingsland, supra; Barger v.*

*Gery, supra; Warne v. Greenbaum,* 101 *A.* 568 (Ch. 1917); *Hummer v. Buerk, supra.* In order to reach this result the court must conclude (1) that the outstanding claimants could not succeed were they in fact to assert a claim, and (2) that there is no real likelihood that any claim will ever be asserted. Such a conclusion leads to a determination of marketability.

Although there are statements in some of the cases to the contrary, we think that in a suit such as this, where the purchaser seeking rescission has shown that record title is outstanding in some person other than the seller, the burden should then shift to the seller to establish his title by adverse possession.

The judgment of the Appellate Division entering judgment in favor of the purchasers is reversed and the cause is remanded to the Superior Court, Chancery Division for a new trial in accordance with what has been said above.

*For reversal and remandment*—Chief Justice HUGHES and Justices MOUNTAIN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—6.

*For affirmance*—None.