STEWART TITLE GUARANTY
CO., Plaintiff,

v.

GREENLANDS REALTY,
L.L.C., Defendant,

v.

Stewart Title Guaranty Co., Title Company of New Jersey and Sun International of North America, Inc., Additional Counterclaim Defendants.

Civil Action No. 97–3577.

United States District Court,
D. New Jersey.

May 12, 1999.

Stuart Alderoty, David P. Kalm, Leboeuf, Lamb, Greene & Macrae, L.L.P., Newark, NJ, for Plaintiff and Additional

Counterclaim Defendant, Stewart Title Guaranty Company and Additional Counterclaim Defendant, Title Company of New Jersey.

Linda J. Cohen, Cozen and O'Connor, Westmont, NJ, Robert W. Hayes, Cozen and O'Connor, Philadelphia, PA, Attorneys for Defendant, Greenlands Realty, L.L.C.

Philip B. Seaton, Gregory A. Lomax, Kozlov, Seaton, Romanini, Brooks, & Greenberg, Cherry Hill, NJ, Attorneys for Additional Counterclaim Defendant, Sun International of North America, Inc.

## OPINION

ORLOFSKY, District Judge.

This case requires me to examine the issue of marketability of title, a legal concept frequently tested on law school and bar examinations, but infrequently considered in judicial opinions. As a consequence of its rare appearance in recent published opinions, I must recede into the annals of the history of New Jersey property law, to apply an ancient doctrine to a modern day commercial dispute.

The dispute between the parties in this case arises out of an "Agreement to Sell and to Buy Real Estate" ("Agreement of Sale" or "Agreement"), by which Greenlands intended to convey title to 1315 Boardwalk ("1315 Boardwalk" or the "Property"), located in Atlantic City, New Jersey, to Sun. Sun terminated the Agreement, claiming that Greenlands did not possess marketable title at the time of the closing. Greenlands argues that it did have marketable title and, therefore, Sun breached the Agreement.

At the close of oral argument on August 3, 1998, the Court issued a bench opinion,[1] concluding that the issue of marketability of title is one for the court and not the jury. *See* Tr., dated Aug. 3, 1998, at 48–49 (citing *Thomas v. Sun Realty, Inc.,* 158 N.J.Super. 257, 262, 385 A.2d 1252 (N.J.Super.Ct.App.Div.1978) and *Herman v. Most,* 125 N.J.L. 563, 565, 17 A.2d 155 (1941)). As a result, the Court directed Additional Counterclaim Defendant, Sun International of North America, Inc. ("Sun"), and Defendant, Greenlands Realty, L.L.C. ("Greenlands"), to file dispositive motions on the issue of marketability of title. *See* Order, filed Aug. 3, 1998, at 2. In accordance with the Court's instructions, on November 19, 1998, Greenlands and Sun each filed a motion for partial summary judgment, addressing solely the issue of marketability of title.

In its motion for summary judgment and in opposition to Greenlands's motion for summary judgment, Sun argues that, at the time of closing, Greenlands did not possess marketable title, because Boardwalk Realty Company ("Boardwalk"), a now defunct corporation, held

---

1. At oral argument, counsel for Sun argued, in support of its motion to dismiss the counterclaim for lack of subject matter jurisdiction, that the Court should realign the parties to transform Greenlands into a plaintiff, which would destroy complete diversity of citizenship and, as a result, deprive this Court of jurisdiction over the case. *See, e.g.,* Tr., dated Aug. 3, 1998, at 3, 10. Sun further argued that a forum selection clause in the Agreement of Sale conferred exclusive jurisdiction over the dispute on the Superior Court of New Jersey. *See id.* at 15–17. Additionally, counsel for Sun argued, in support of its motion to dismiss the counterclaim for failure to state a claim, that, even if the Court assumed all of Greenlands's allegations in its counterclaim to be true, Sun did not breach the Agreement of Sale. *See id.* at 18.

In my bench opinion addressing these arguments, I concluded that I should not realign the parties, because "events subsequent to the filing of a complaint, including the addition of new parties, cannot divest a court of diversity jurisdiction." *Id.* at 46. With respect to the forum selection clause, I found that "[t]he language in the ... Agreement [of Sale] is clearly insufficient to confer exclusive jurisdiction on the New Jersey Superior Court." *Id.* at 47. Finally, I concluded that I could not decide the merits of Sun's motion to dismiss for failure to state a claim without briefs from the parties specifically addressing the issue of marketability of title. *See id.* at 48–49.

the title to part of the Property. Greenlands, in its motion for summary judgment and opposition to Sun's motion for summary judgment, takes the opposite position and argues that, at the time of closing, it possessed marketable title, because Boardwalk had conveyed all of its interest in the Property.

For the reasons set forth below, I find that Boardwalk did convey all of its title in the Property and, therefore, at the time of closing, Greenlands's title to the Property was marketable. Accordingly, I will grant Greenlands's motion for summary judgment and deny Sun's motion for summary judgment.

## I. FACTUAL BACKGROUND

The convoluted facts giving rise to this dispute are as follows. On July 5, 1996, Joseph Zoll ("Zoll") purchased property, located at and known as 1315 Boardwalk, in Atlantic City, which consisted of two parcels, the "main parcel" and the "strip," a three-foot wide segment of land running from the main parcel to the street, from F.W. Woolworth's, for $1,100,000. *See* Affidavit of Joseph Zoll in Support of Defendant/Counterclaim Plaintiff Greenland[s] Realty, L.L.C.'s Motion for Summary Judgment ("Zoll Cert."), filed Nov. 19, 1998, ¶ 2; Certification of William P. Fitzgerald, dated Nov. 17, 1998 ("Fitzgerald Cert. II"), Ex. B (Ponzio Survery showing map of the property).[2] The main parcel fronts on the boardwalk and the strip connects the back of the main parcel with South Carolina Avenue, which is 110 feet from the western edge of the main parcel. *See* Fitzgerald Cert. II, Ex.B (Ponzio Survey).

After Zoll signed the contract to purchase 1315 Boardwalk, "Greenlands Realty, L.L.C.[, of which Zoll is] a managing member[,] was formed and [Zoll] assigned [his] rights under the Woolworth agreement to Greenlands which then exercised

those rights by purchasing the property." Zoll Cert. ¶ 3. Greenlands purchased a title insurance policy from Additional Counterclaim Defendant, Title Company of New Jersey, which was underwritten by Plaintiff and Additional Counterclaim Defendant, Stewart Title Guaranty Co., to cover the Property. *See* Fitzgerald Cert. I, Ex. K (Insurance Policy).

"Even before the closing between Greenlands and Woolworth was completed, [Zoll] was approached by the representative of an undisclosed principal who inquired as to whether Greenlands would sell the Property it was buying from Woolworth." Zoll Cert. ¶ 3. "As a result of that inquiry, negotiations began and those negotiations resulted in a September 4, 1997, Agreement of Sale wherein Griffin Gaming and Entertainment, Inc. ("Griffin") agreed to pay the sum of Five Million ($5,000,-000.00) Dollars for the Property." *Id.; see also id.,* Ex. A–1 (Agreement of Sale). "In the period between the execution of the Griffin Agreement and the scheduled closing, Griffin merged into a subsidiary of Sun International, Inc., with Sun emerging as the surviving corporation." Statement of Undisputed Facts of Defendant/Counterclaim Plaintiff Greenlands[ ] Realty L.L.C. in Support of Motion for Summary Judgment as to Count I ("Greenlands's Statement"), filed Nov. 19, 1998, ¶ 39; Sun's Statement of Disputed Facts as to Greenlands'[s] Statement of Undisputed Facts in Support of Motion for Summary Judgment as to Count I, filed Nov. 19, 1998, ¶ 39 ("Agreed."). "Sun succeeded to Griffin's rights and obligations under the Griffin Agreement." Greenlands's Statement ¶ 39.

Under the Agreement of Sale, "[t]he Closing of the purchase and sale of the Property [was to] take place at 10:00 a.m. on July 3, 1997." *Id.* (Agreement of Sale ¶ 6). The Agreement also provided that

---

**2.** Sun has filed two certifications of William P. Fitzgerald, one dated November 9, 1998, and the other dated November 19, 1998. I

will refer to the first as "Fitzgerald Cert. I" and the second as "Fitzgerald Cert. II."

"[t]ime is of the essence." *Id.* The Agreement further provided that:

> At the Closing, title to the Property shall be good and marketable and free of all liens, mortgages, encumbrances and any and all rights of others and/or other title objections or matter affecting title, except (a) utility easements and other recorded agreements which do not (i) materially adversely limit the use of the Property, (ii) provide that the Property would be forfeited if they were violated, or limit the use of the Property for any purpose allowed by applicable zoning district in which the Property is located; and (b) those matters, if any, shown as exceptions to title in Seller's title insurance policy dated June 28, 1996.

*Id.* (Agreement of Sale ¶ 7).

On June 26, 1997, Sun sent a letter to Greenlands, stating that the strip "appears to be a part of Lot 161, Block 20 on the official Tax Map of Atlantic City" and, as a result, "title to the Property does not appear to be marketable or insurable." *Id.,* Ex. A–2 (letter from Arthur E. Sklar, Esq., to Greenlands Realty, L.L.C., dated June 26, 1997). Sun had discovered that title to the strip may not have passed through the same series of conveyances as had the main parcel. Specifically, Boardwalk Realty Company ("Boardwalk") obtained title to the main parcel in 1910 and to the strip in 1912. *See* Fitzgerald Cert. I, Exs. A–1 (1910 Deed) & A–2 (1912 Deed). In 1970, Boardwalk sold the property to William B. Colsey, III, and Bruce A. Mahon (collectively, "Colsey and Mahon"), however, the new deed only made reference to the property that Boardwalk acquired in 1910 and not the strip, which was acquired through the 1912 Deed. *See id.,* Ex. A–3 (1970 Deed). As a result, Sun believed that title to the strip remained with Boardwalk, while title to the main parcel passed to Colsey and Mahon and then to a series of other owners. *See* Fitzgerald Cert. II, Ex. A (chronology of owners of the property described in the

1910 and 1912 Deeds); Fitzgerald Cert. I, Exs. A–3 to A–6 (subsequent deeds).

Uncontroverted evidence in the summary judgment record, however, reveals that Boardwalk intended to convey both the main parcel and the strip to Colsey and Mahon. For example, Ralph Sitley stated, based on his first-hand knowledge as an employee of Boardwalk and through conversations with his mother, a former shareholder of Boardwalk and president of Boardwalk at the time of the conveyance, "that Boardwalk Realty Company intended to sell its entire interest in 1315 Boardwalk and did not intend to keep any part of the property for itself." Verification of Ralph Sitley ("Sitley Ver."), dated Nov. 17, 1998, ¶ 5. Further, in his affidavit filed in a state court action to quiet title, William P. Gillingham, Executive Vice President of the Title Company of New Jersey, stated that:

> All records subsequent to the transfer by Boardwalk suggest it intended to include the [strip]. The two parcels had been used as one. They had been taxed as one parcel for 58 years when Boardwalk conveyed [to Cosley and Mahon].... All subsequent owners of the Main Parcel have exercised all incidents of ownership and control over the [strip] in conjunction with the Main Parcel, including continuous payment of taxes.

Appendix of Greenlands Realty, L.L.C. in Support of Motion for Summary Judgment as to Count I of its Counterclaim for Breach of Contract Against Counterclaim Defendant Sun International of North America ("Appendix"), filed Nov. 19, 1998, Ex. E (Order to Show Cause, filed on Aug. 27, 1997, in *Greenlands Realty, L.L.C. v. Boardwalk Realty Co.,* Civil Action No. ATL–C–135–97E, New Jersey Superior Court, Chancery Division, attaching Verifying Affidavit of William P. Gillingham in Support of Plaintiff's Complaint, Aug. 21, 1997, ¶ 5). Based on his review of the deeds to 1315 Boardwalk, Gillingham concluded that "[i]t appears ... without question that it was as a result of inadvertence or mistake that Boardwalk failed to specif-

ically describe the [strip] when it conveyed title to the Property to Colsey in 1970." *Id.*

Boardwalk dissolved in 1972. *See* Appendix, Ex. E (Order to Show Cause, filed on Aug. 27, 1997, in *Greenlands Realty, L.L.C. v. Boardwalk Realty Co.*, Civil Action No. ATL–C–135–97E, New Jersey Superior Court, Chancery Division, attaching Certificate of Dissolution of Boardwalk Realty Company, dated Jan. 11, 1972). Boardwalk's Certificate of Dissolution provides "that BOARDWALK REALTY COMPANY be dissolved and that all its corporate rights, franchises, and privileges of whatsoever kind or nature which it may have acquired be surrendered and cancelled [sic] in accordance with the laws of the State of New Jersey." *Id.* In addition, Boardwalk's two shareholders, Dorothea Sitley and Mercia Kamsler, both died in 1989. *See* Appendix Exs. U (Death Certificate of Dorothea Sitley) and V (Death Certificate of Mercia Kamsler). Thus, Boardwalk dissolved and its former shareholders passed away without disposing of any remaining interest they may have had in the Property, strongly suggesting that Boardwalk and its former shareholders did not believe that they had any such interest.

In addition, in his verification filed in this case, Ralph Sitley, Dorothea Sitley's son, stated: "I do not believe that I inherited from my mother ... any interest in the property known as 1315 Boardwalk, Atlantic City, New Jersey. I understand the entire interest to have been sold in 1970." Sitley Ver. ¶ 8. Further, Sitley avers that he has "never contemplated bringing any kind of action to assert an ownership interest in any portion of 1315 Boardwalk." *Id.*, ¶ 9. There is no evidence in the record suggesting that the children or estate of Mercia Kamsler have contemplated or intend to initiate an action to assert a claim to the strip. Additionally,

Boardwalk published a "Notice to Creditors" in the *Atlantic City Press*, on December 27, 1971, and January 3 and 10, 1972, stating that "all creditors and others who have not filed their claims or demands ... shall be forever barred from suing on such claims or demands" unless a claim is made by July, 1972.[3] Appendix, Ex. E.

Upon discovering this aberration in the description contained in the deeds to the property, Greenlands obtained a quitclaim deed from Woolworth to extinguish any title that Woolworth may have had in the strip. *See* Fitzgerald Cert. II, Ex. E (Quitclaim Deed). Sun, nonetheless, terminated the Agreement of Sale, claiming that Greenlands's quitclaim deed did not render the title to the Property marketable. *See* Appendix, Ex. A–2.

On August 27, 1997, Stewart Title filed a state court action, on behalf of Greenlands, to quiet title to the strip. The New Jersey Superior Court, Chancery Division, determined that Boardwalk's failure to include a metes and bounds description of the strip in the 1970 deed to Colsey and Mahon was a mistake and, as a result, the court appointed Nancy Gemmel, Esq., "as a commissioner in accordance with [N.J. Stat. Ann. § ] 46:7–1 to execute [a] Confirmatory Deed." Appendix, Ex. E (Judgment, filed Oct. 15, 1997, in *Greenlands Realty, L.L.C. v. Boardwalk Realty Co.*, Civil Action No. ATL–C–135–97E, New Jersey Superior Court, Chancery Division). On November 18, 1997, Ms. Gemmel signed a confirmatory deed to the strip on behalf of Greenlands. *See* Appendix, Ex. R (Confirmatory Deed).

After obtaining the confirmatory deed, Stewart Title then filed this action, seeking a declaratory judgment that it was not obligated to provide coverage for any loss that Greenlands might have sustained as a result of Sun's termination of the Agreement of Sale. This Court has jurisdiction

---

**3.** The "Notice to Creditors" provides a specific date in July, 1972, by which claims must be made, however, this date is unreadable in the copy of the notice presented in the summary judgment record. *See* Appendix, Ex. E.

over this matter pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties, and the amount in controversy is in excess of $75,000, exclusive of interest and costs.

## II. LEGAL STANDARD FOR MOTIONS FOR SUMMARY JUDGMENT

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Reitz v. County of Bucks,* 125 F.3d 139, 143 (3d Cir.1997); *Hersh v. Allen Prod. Co.,* 789 F.2d 230, 232 (3d Cir.1986). In deciding whether there is a disputed issue of material fact, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *See, e.g., Pennsylvania Coal Ass'n v. Babbitt,* 63 F.3d 231, 236 (3d Cir.1995); *Hancock Indus. v. Schaeffer,* 811 F.2d 225, 231 (3d Cir.1987).

Under the rule, a movant must be awarded summary judgment on all properly supported issues identified in its motion, except those for which the non-moving party has provided evidence to show that a question of material fact remains. Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion ...; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original).

What the non-moving party must do is "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)); *see also Lujan v. National Wildlife Fed.,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) ("The object of [Rule 56(e) ] is not to replace conclusory allegations of the First Amended Complaint ... with conclusory allegations of an affidavit."); *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992) ("[T]o raise a genuine issue of material fact ... the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant," but rather must exceed the "'mere scintilla' threshold."), *cert. denied,* 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993). If the non-moving party fails to oppose the motion by written objection, memorandum, affidavits and other evidence, the Court "will accept as true all material facts set forth by the moving party with appropriate record support." *Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev.,* 922 F.2d 168, 175 (3d Cir.1990) (quoting *Jaroma v. Massey,* 873 F.2d 17, 21 (1st Cir.1989)).

Even where the non-moving party has failed to establish a triable issue of fact, summary judgment will not be granted unless "appropriate." Fed.R.Civ.P. 56(e); *see Anchorage Assocs.,* 922 F.2d at 175. Rule 56(e) of the Federal Rules of Civil Procedure requires that the case be evaluated on its merits, with summary judgment being granted for the movant only if it entitled to a judgment as a matter of law. *See Anchorage Assocs.,* 922 F.2d at 175.

## III. DISCUSSION

In its motion for summary judgment, Sun argues that Greenlands did not pos-

sess marketable title at the time of the closing and, because the Agreement provided that time was of the essence, Sun had the right to terminate the Agreement of Sale. *See* Brief in Support of Counterclaim Defendant, Sun International of North American, Inc.'s Motion for Summary Judgment Dismissing Counts I and II of the Amended Counterclaim of Defendant, Greenlands Realty, L.L.C., Nov. 19, 1998, at 28–41. Sun argues that Boardwalk, and not Greenlands, had title to the strip at the time of closing. In its motion for summary judgment, Greenlands, not surprisingly, takes the opposite position, arguing that title was marketable on the day of the closing, and, as a result, Sun breached the Agreement of Sale.

■ The resolution of this dispute hinges on whether the title to the Property was "marketable" at the time of closing. "A marketable title is one that is relatively free from doubt, such that in a suit for specific performance a court would compel the prospective purchaser to accept title." *Keown v. West Jersey Title & Guar. Co.,* 161 N.J.Super. 19, 23, 390 A.2d 715 (N.J.Super.Ct.App.Div.1978). A party "will not be compelled to take a conveyance if it be reasonably probable that he will be exposed to litigation thereafter, or if it seems reasonable to believe that subsequently he will be obliged to institute an affirmative action to quiet title or otherwise." *Gaub v. Nassau Homes, Inc.,* 53 N.J.Super. 209, 223, 147 A.2d 73 (N.J.Super.Ct.App.Div.1958). "It has uniformly been held in [New Jersey state courts] that a court will never compel a purchaser to take title unless it be one which puts the purchaser in all reasonable security that no flaw or doubt will come up to disturb its marketable title; provided that the doubt be real and not fanciful." *Breitman v. Jaehnal,* 99 N.J.Eq. 243, 248, 132 A. 291 (N.J.Ch.1926), *aff'd,* 100 N.J.Eq. 559, 135 A. 915 (N.J.Err. & App.1927); *see also Keown,* 161 N.J.Super. at 23, 390 A.2d 715 ("if it is reasonably probable that the purchaser would be exposed to litigation not of a frivolous nature concerning the title, or would have to bring an action to quiet title, then specific performance would be denied to the prospective seller and the title would be considered unmarketable.").

■ "'Title[, however,] is not rendered unmarketable by an alleged defect which is not reasonably debatable or by the threat of litigation which has no rational justification.'" *Donaghy v. Roudebush,* 614 F.Supp. 585, 588 (D.N.J.1985) (Bissel, J.) (quoting *Gaub,* 53 N.J.Super. at 223, 147 A.2d 73); *see also Thomas v. Sun Realty, Inc.,* 158 N.J.Super. 257, 263, 385 A.2d 1252 (N.J.Super.Ct.App.Div.1978) ("Title is not rendered unmarketable by an alleged defect which is not reasonably debatable or by the threat of litigation which has no rational justification."). "Any title challenge 'must have some substance'; it cannot be based on 'remote hypothetical or unfounded doubts.'" *Donaghy,* 614 F.Supp. at 588 (quoting *Gaub,* 53 N.J.Super. at 223, 147 A.2d 73). As a result, a court must enforce a real estate agreement and order specific performance if the court determines: "(1) that the outstanding claimants could not succeed were they in fact to assert a claim, and (2) that there is no real likelihood that any claim will ever be asserted." *Conklin v. Davi,* 76 N.J. 468, 477, 388 A.2d 598 (1978). Thus, I must determine if any party is likely to assert a viable claim based on Boardwalk's alleged interest in the strip.

### A. Will Any Outstanding Claimants Succeed If They Assert a Claim?

The success of any action asserting a claim to the strip depends on the meaning of the 1970 deed in which Boardwalk conveyed property to Cosley & Mahon. That is, if Boardwalk did, in fact, convey the strip to Cosley and Mahon, then any claim to the strip from one of Boardwalk's successors-in-interest will fail.

■ "In determining the meaning of a deed, [the] prime consideration is the intent of the parties." *Hagaman v. Board*

·of Ed., 117 N.J.Super. 446, 451, 285 A.2d 63 (N.J.Super.Ct.App.Div.1971) (citing Normanoch Ass'n v. Baldasanno, 40 N.J. 113, 125, 190 A.2d 852 (1963)). Consequently, to determine who has title to a piece of property, the court must "examine the language of the deed as a whole in the light of the surrounding circumstances to ascertain the intent of the parties." United States Trust Co. v. State, 226 N.J.Super. 8, 12, 543 A.2d 457 (N.J.Super.Ct.App.Div.1988) (citing Hammett v. Rosensohn, 26 N.J. 415, 423, 140 A.2d 377, (1958)); see also Mills v. Davison, 54 N.J.Eq. 659, 664, 35 A. 1072 (N.J.Err. & App.1896) ("The dominating rule in the construction of deeds and other written instruments is to so construe them as to give effect to the intention of the parties, as far as is permitted by the rules of law.").

■ In this case, the summary judgment record contains uncontradicted evidence that Boardwalk intended to convey the strip to Colsey and Mahon through the 1970 deed. Ralph Sitley stated, in a verification, that "it is [his] understanding both from conversations with [his] mother and the transaction itself, that Boardwalk Realty Company intended to sell its entire interest in 1315 Boardwalk and did not intend to keep any part of the property for itself." Sitley Ver. ¶ 5. Similarly, William P. Gillingham, Executive Vice President of the Title Company of New Jersey, stated, in an affidavit, that "[i]t appears to [him] without question that it was as a result of inadvertence or mistake that Boardwalk failed to specifically describe the [strip] when it conveyed title to the Property to Colsey in 1970." Appendix, Ex. E (Order to Show Cause, filed on Aug. 27, 1997, in Greenlands Realty, L.L.C. v. Boardwalk Realty Co., Civil Action No. ATL–C–135–97E, New Jersey Superior Court, Chan-

cery Division, attaching Verifying Affidavit of William P. Gillingham in Support of Plaintiff's Complaint, Aug. 21, 1997, ¶ 5). Furthermore, it is undisputed that, since 1912, the main parcel and the strip "had been used as one [and] . . taxed as one parcel." Id. Finally, Boardwalk's dissolution without disposing of the strip strongly indicates that Boardwalk believed that it had conveyed the strip to Consley and Mahon in 1970.

In sum, the uncontroverted evidence in the summary judgment record leads to the inescapable conclusion that Boardwalk intended to convey the strip to Colsey and Mahon in 1970.[4] As a result, any person alleging to be a successor-in-title to Boardwalk will not succeed on a claim to the strip, because the uncontradicted evidence demonstrates that Boardwalk sold the strip in 1970.

■ Sun attempts to avoid this "unavoidable" conclusion by arguing that "when the legal description is unambiguous, the document speaks for itself." Reply Memorandum in Response to Defendant/Counterclaim Plaintiff Greenlands Realty, L.L.C.'s brief in Opposition to Counterclaim Defendant Sun International of North America, Inc.'s Motion for Partial Summary Judgment, filed Nov. 19, 1998, at 6. While it is true that as a general rule, the court must enforce the "complete and unambiguous" language of a deed, there is an exception to this rule when a party "alleges that a deed, executed pursuant to an agreement to convey to him, does not fully or correctly express the intention of the parties thereto, through mistake." Myers v. Vogt, 101 N.J.Eq. 452, 455, 145 A. 866 (N.J.Ch.1927). When a party does allege that the deed contains a mistake, then the court must consider parol evidence to determine the intent of the par-

4. The New Jersey Superior Court, Chancery Division, also determined that Boardwalk's failure to include the 1912 Deed in its description of 1315 Boardwalk in the deed to Colsey and Mahon resulted from a scrivener's error. Because that court reached its deci-

sion after the closing date, its finding was not available to Sun at the time it had to decide whether or not to terminate the Agreement of Sale. Therefore, I will not consider the State Court's decision in deciding the issue of marketability of title in this case.

ties. *See id.* This is such an instance, because Greenlands has argued that the 1970 deed from Boardwalk to Cosley and Mahon contained an error, and, as a result, I must ascertain the intent of the parties.

█ In an further effort to avoid the conclusion that title was marketable, Sun argues that even if Boardwalk did intend to convey the strip to Cosley and Mahon, then Cosley and Mahon's successor-in-interest, Bartlett Corporation ("Bartlett"), still possesses title to the strip. *See* Reply Memorandum in Response to Defendant/Counterclaim Plaintiff Greenlands Realty, L.L.C.'s brief in Opposition to Counterclaim Defendant Sun International of North America, Inc.'s Motion for Partial Summary Judgment, filed Nov. 19, 1998, at 2–5. In 1970, just months after they had purchased 1315 Boardwalk from Boardwalk, Cosley and Mahon conveyed the property to Bartlett, through a deed that also did not contain a metes and bounds description of the strip or refer to the 1912 Deed. *See* Appendix, Ex. C–4 (Deed, dated Sept. 1, 1970). Approximately six years later, Bartlett conveyed the property to ALA Development Corporation ("ALA"), with a deed that also lacked a metes and bounds description of the strip and any reference to the 1912 Deed. *See id.,* Ex. C–5 (Deed, dated Nov. 11, 1976). Further, there is no evidence in the summary judgment record that explicitly reveals the parties' intentions expressed in either the deed to Bartlett or the deed to ALA. Based on this evidence (and lack of evidence), Sun contends that, even if Boardwalk did intend to convey the strip, the repetition of its mistake in the deed from Cosley and Mahon to Bartlett and then again from Bartlett to ALA "leaves title to [t]he [s]trip reposing in the Bartlett Corporation." *Id.* at 4.

First, this argument makes no sense, because, if Cosley and Mahon transferred title to the strip to Bartlett despite the absence of a metes and bounds description of the strip, then certainly Bartlett must have done the same. In addition, Sun's argument defies both logic and common sense. Common sense suggests that scriveners, subsequent to the one who prepared the 1970 Deed from Boardwalk to Cosley and Mahon, likely copied the language from preceding deeds and, as a result, repeated the original error. Given that the tax map continued to treat the two parcels as one, *see* Appendix, Ex. B (Verification of William W. Schultz, Esquire, filed Nov. 19, 1998, ¶ 3), logic compels the conclusion that each of the transferors subsequent to Boardwalk repeated the original scrivener's error. "Whether we agree with Coke, that the life of the law is logic, or [with] Holmes, that it is experience," *Phillips v. United States,* 518 F.2d 108, 111 (4th Cir.1975) (Widener, J., dissenting), I am inexorably led to the conclusion that the original scrivener's error was repeated in subsequent deeds and, as a result, the strip was conveyed to subsequent owners, along with the main parcel.

In short, under these circumstances, a scrivener's error does not represent fertile ground for a lawsuit of any merit. Thus, I conclude that any "outstanding claimants could not succeed were they in fact to assert a claim." *See Conklin v. Davi,* 76 N.J. 468, 477, 388 A.2d 598 (1978).

**B. Is There a Real Likelihood That Any Claim Will Ever Be Asserted?**

█ Sun insists that "numerous parties unfamiliar to the matter at hand still have interests viable against this property." Memorandum of Law in Opposition to third-Party Plaintiff, Greenlands' Motion for Summary Judgment as to Count One of the Counterclaim by Greenlands Realty, L.L.C. for Breach of Contract, filed Nov. 19, 1998, at 11.

Because Boardwalk has dissolved and, therefore, has ceased to exist, only its shareholders or former creditors may make claims upon assets that Boardwalk may have owned. *See* N.J. Stat. Ann.

§ 14A:12–16 (shareholders);[5] *id.* § 14A:12–12 (creditors). At this point, however, all of Boardwalk's creditors are "forever barred from suing on [a claim against Boardwalk] or otherwise realizing upon or enforcing it." *Id.* § 14A:12–13 (amended 1973). As permitted by N.J. Stat. Ann. § 14A:12–12(1),[6] Boardwalk published a "Notice to Creditors" in the *Atlantic City Press,* on December 27, 1971, and January 3 and 10, 1972, stating that "all creditors and others who have not filed their claims or demands ... shall be forever barred from suing on such claims or demands" unless a claim is made by July, 1972.[7] Appendix, Ex. E. Consequently, all of Boardwalk's potential creditors have been foreclosed from making any claims against Boardwalk's assets for over 25 years.

Nor could Boardwalk's shareholders assert a claim to the strip, since they both passed away in 1989. *See* Appendix, Exs. U (Death Certificate for Dorothea Sitley) & V (Death Certificate for Mercia Kamsler). Sun argues, however, that "the legatees and devisees of Dorothea Sitley and Mercia Kamsler still have rights to the fee simple interest in [t]he strip [because it] never transferred out of Boardwalk." Memorandum of Law in Opposition to Third–Party Plaintiff [sic], Greenlands' Motion for Summary Judgment as to Count One of the Counterclaim by Greenlands Realty, L.L.C. for Breach of Contract, filed Nov. 19, 1998, at 14. To the contrary, however, I have determined above that because Boardwalk intended to convey the strip as part of the 1970 deed to Cosley and Mahon, it conveyed its entire fee simple interest in the strip. In other words, the legatees and devisees of Dorothea Sitley and Mercia Kamsler have no rights to the strip to which they could have succeeded.

Furthermore, because the uncontroverted evidence in the summary judgment record demonstrates that Boardwalk intended to convey the strip, none of Ms. Sitley's or Ms. Kamsler's legatees or devisees will likely bring suit to claim an interest in the strip, because any legatee and devisee most likely believes that he or she does not possess any rights to the strip. Ralph Sitley, the son of Ms. Sitley, has confirmed this inference, by stating, in his verification, that he "do[es] not believe that [he] inherited from [his] mother ... any interest in the property known as 1315 Boardwalk, Atlantic City, New Jersey." Sitley Ver. ¶ 8. Because Ralph Sitley "understand[s] the entire interest to have been sold in 1970," he has "never contemplated bringing any kind of action to assert an ownership interest in any portion of 1315 Boardwalk." *Id.* ¶¶ 8–9. There is no evidence in the summary judgment record to suggest that any other legatee or devisee would believe that he or she does have an interest in the strip.

Since I have determined that Boardwalk's creditors cannot bring a claim and that the legatees and devisees of Ms. Sitley and Ms. Kamsler have no viable interest in the strip and, therefore, are highly unlikely to bring a claim, I find that "there

---

5. N.J. Stat. Ann. § 14A:12–16 provides that:
   Any assets remaining after payment of or provision for claims against the corporation shall be distributed among the shareholders according to their respective rights and interests. Distribution may be made either or both [sic] cash and kind.

6. N.J. Stat. Ann. § 14A:12–12(1) provides, in pertinent part:
   [a] notice ... published three times, once in each of 3 consecutive weeks, in a newspaper of general circulation in the county in which the registered office of the corporation is located [which states] that all persons who are creditors of the corporations shall present written proof of their claims to the corporation or the receiver, as the case may be, at a place and on or before a date named in the notice, which shall not be less than 6 months after the date of the first publication.

7. The "Notice to Creditors" provides a specific date in July, 1972, by which claims must be made, however, this date is unreadable in the copy of the notice in the summary judgment record. *See* Appendix, Ex. E.

is no real likelihood that any claim will ever be asserted." *See Conklin v. Davi,* 76 N.J. 468, 477, 388 A.2d 598 (1978). Furthermore, because I have concluded above that any "outstanding claimants could not succeed were they in fact to assert a claim," *see id.,* I find that, at the time of the closing, title was marketable. Accordingly, I will grant Greenlands's motion for summary judgment and deny Sun's motion for summary judgment.

## IV. CONCLUSION

For the reasons set forth above, I find that Boardwalk intended to convey title to the strip and its failure to include a metes and bounds description of the strip in the deed was a scrivener's error. As a result, I find that none of Boardwalk's successors-in-interest can assert a viable claim, nor are they likely to attempt to do so. Since there was no real threat of litigation at the time of closing, Greenlands possessed marketable title. Accordingly, I will grant Greenlands's motion for summary judgment and deny Sun's motion for summary judgment. I will enter an appropriate order.

### ORDER

This matter having come before the Court on the motion of Defendant, Greenlands Realty, L.L.C., for summary judgment, and on the motion of Additional Counterclaim Defendant, Sun International of North America, Inc., for summary judgment, Linda J. Cohen, Esq., and Robert W. Hayes, Esq., of Cozen and O'Connor, appearing on behalf of Defendant, Greenlands Realty, L.L.C., Philip B. Seaton, Esq., and Gregory A. Lomax, Esq., of Kozlov, Seaton, Romanini, Brooks & Greenberg, appearing on behalf of Additional Counterclaim Defendant, Sun International of North America, Inc., and Stuart Alderoty, Esq., and David P. Kalm, Esq., of Leboeuf, Lamb, Greene & Macrae, L.L.P., appearing on behalf of Plaintiff and Additional Counterclaim Defendant, Stewart Title Guaranty Company

and Additional Counterclaim Defendant, Title Company of New Jersey; and,

The Court having considered the submissions of the parties, and for the reasons set forth in the OPINION filed concurrently with this ORDER;

IT IS, on this 12th day of May, 1999, HEREBY ORDERED that the motion of Defendant, Greenlands Realty, L.L.C., for summary judgment, is GRANTED; and

IT IS FURTHER ORDERED that the motion of Additional Counterclaim Defendant, Sun International of North America, Inc., for summary judgment, is DENIED.